_____
BENJAMIN A. KAHN
UNITED STATES BANKRUPTCY JUDGE

---

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF NORTH CAROLINA
WINSTON-SALEM DIVISION

IN RE:

RABBI YITZHAK JOEL MILLER
*aka* Rabbi Yitzhak Miller
*aka* Joel Miller

             DEBTOR.

_____

RABBI YITZHAK MILLER,

          PLAINTIFF,

v.

RECOVCO MORTGAGE MANAGEMENT,
LLC; HOF LEGAL TITLE TRUST
LIENHOLDERS of the real
properties herein by and
through U.S. Bank Trust
National Association, Trustee;
SPECIALIZED LOAN SERVICING,
LLC; FAY SERVICING, INC.;
SELENE FINANCE, LP; DLJ
MORTGAGE CAPTIAL; SN SERVICING
CORP.,

          DEFENDANTS.

CASE NO. 22-50065

Chapter 11

ADVERSARY PROCEEDING
CASE NO. 22-06005

1

## MEMORANDUM OPINION GRANTING MOTIONS TO DISMISS THE AMENDED COMPLAINT, DENYING MOTION FOR DEFAULT JUDGMENT, AND DISMISSING ALL CLAIMS

This adversary proceeding is before the Court on the *Motion to Dismiss the Amended Complaint*, ECF No. 67, filed by Fay Servicing, LLC ("Fay") and *Motion to Dismiss the Amended Complaint*, ECF No. 89, filed by Specialized Loan Servicing, LLC ("Specialized") and HOF I Grantor Trust 5, U.S. Bank Trust National Association as Delaware Trustee ("HOF I Grantor Trust 5") (together "Motions to Dismiss"),[1] and the *Motion for Default Judgment* against Recovco, ECF No. 130, filed by Plaintiff.  For the reasons set forth herein, the Court will enter an order denying the Motion for Default Judgment; granting the Motions to Dismiss under Fed. R. Civ. P. 12(b)(6), made applicable to this adversary proceeding by Fed. R. Bankr. P. 7012(b), with respect to Fay and Specialized, and under Fed. R. Civ. P. 4(m) and 12(b)(4), made applicable to this proceeding by Fed. R. Bankr. P. 7004(a)(1) and 7012(b), with respect to HOF I Grantor Trust 5; dismissing all claims against Fay, Specialized, and Recovco in the Amended Complaint with prejudice; and dismissing all claims against HOF I Grantor Trust 5 and HOF Legal Title Trust Lienholders ("HOF")[2] without prejudice.

---

[1] Recovco Mortgage Management, LLC ("Recovco") similarly filed a *Motion to Dismiss the Amended Complaint*. ECF No. 84.  The Court has stricken that motion. ECF No. 125.

[2] Plaintiff named HOF as a defendant in this adversary proceeding. HOF I Grantor Trust 5 has not been named as a party in this adversary proceeding and has filed a motion to dismiss under Fed. R. Civ. P. 12(b)(4).

## I.    Jurisdiction and Authority

The Court has subject matter jurisdiction over this proceeding under 28 U.S.C. § 1334(b).  Under 28 U.S.C. § 157(a), the United States District Court for the Middle District of North Carolina has referred the underlying bankruptcy case and this proceeding to this Court by its Local Rule 83.11.  The parties have consented to this Court entering final judgment on all matters raised in the pleadings, and the Court has constitutional authority to enter final judgment in this proceeding.  ECF No. 45, ¶ D.2.; ECF No. 53.  Venue is proper under 28 U.S.C. § 1409(a).

## II.  Procedural History

Rabbi Yitzhak Joel Miller ("Plaintiff" or "Miller") commenced this adversary proceeding by filing a complaint on March 28, 2022, against Fay, Recovco, Specialized, Selene Finance, L.P. ("Selene"), DLJ Mortgage Capital ("DLJ"), SN Servicing Corporation ("SN Servicing"), and HOF of the real properties herein by and through U.S. Bank Trust National Association, Trustee.  ECF No. 1.

On July 22, 2022, Plaintiff filed an *Amended Complaint*.  ECF No. 51 ("Amended Complaint").  The Amended Complaint asserts twelve claims for relief:[3] (1) constructive fraud against Recovco; (2) fraudulent inducement against Recovco; (3) negligent

---

[3] The Amended Complaint contains a thirteenth claim for breach of contract against Selene, but Plaintiff filed a voluntary dismissal of all claims against Selene.  See ECF No. 102.

misrepresentation against Recovco; (4) breach of duty of good faith and fair dealing against Specialized; (5) constructive fraud against Specialized and Recovco; (6) negligent misrepresentation against Specialized; (7) abuse of process against Specialized, Fay, and HOF; (8) civil conspiracy against Recovco, Specialized, Fay, and HOF; (9) breach of settlement agreement against Specialized and Fay; (10) UDTPA against Recovco, Specialized, Fay, and HOF; (11) racketeering in violation of 18 U.S.C. § 1961 et seq. against Recovco, Specialized, Fay, and HOF; and (12) breach of contract against Fay. Id.

On July 29, 2022, Plaintiff filed a motion to allow the Amended Complaint, ECF No. 55, to which Defendants objected on the bases of unfair prejudice and futility. ECF No. 56. On September 12, 2022, the Court entered an order overruling Defendants' objections and granting Plaintiff leave to amend the original complaint. ECF No. 59.

On September 30, 2022, Fay filed a Motion to Dismiss and *Memorandum of Law in Support of Motion to Dismiss the Amended Complaint*. ECF Nos. 67 & 67-1. Fay asserts that the Amended Complaint should be dismissed as to all claims asserted against Fay for failure to state a claim upon which relief may be granted and failure to comply with the pleading standards under the Federal Rules of Civil Procedure. Specifically, Fay asserts that claims seven, eight, nine, and ten are impermissible shotgun pleading and

4

that they, along with claims eleven and twelve, fail to state a claim for relief.

On October 31, 2022, Specialized and HOF I Grantor Trust 5 filed a Motion to Dismiss and *Memorandum in Support of Their Motion to Dismiss Plaintiff's Amended Complaint*.   ECF Nos. 89 & 90. Specifically, Specialized requests that all claims be dismissed "for lack of standing, failure to state a claim upon which relief can be granted, and failure to comply with the pleading standards under the Federal Rules of Civil Procedure."   ECF No. 90, at 2. They further assert that claims four, five, six, eight, ten, and eleven are barred by North Carolina's Statute of Frauds and Louisiana's Credit Agreement Statement.   Id.   "Additionally, to the extent that Plaintiff asserts that [HOF I Grantor Trust 5] is a named defendant, [HOF I Grantor Trust 5] requests that the Court dismiss with prejudice all claims asserted against it for lack of personal jurisdiction and insufficient process."   Id.

The Court granted Plaintiff multiple extensions to file replies to the motions to dismiss, ECF Nos. 82, 93 & 99, and, on November 14, 2022, Plaintiff timely filed his response to the motions.   ECF No. 100 ("Response").   Plaintiff did not request further leave to amend in his Response.   The Court held a hearing on the Motions to Dismiss on February 7, 2023.   C. Scott Meyers, counsel for Plaintiff, G. Benjamin Milam, counsel for Fay, Anna Hobson, counsel for Recovco, and Hannah Kays, counsel for

Specialized and HOF I Grantor Trust 5, appeared at the hearing. At the conclusion of the hearing, the Court took the matter under advisement.

On March 31, 2023, counsel for Recovco filed a Motion to Withdraw as Attorney for Recovco. ECF No. 106. In her motion, Hobson indicated that she had given Recovco "reasonable warning" that she would request leave to withdraw from the representation, and that she should be permitted to withdraw under Rule 1.16(b) of the North Carolina Rules of Professional Conduct because Recovco failed to correspond with counsel on the merits of the case. Id. at 2. Counsel further stated that she had been informed that Recovco was "in wind-down mode." Id. On April 26, 2023, the Court entered its order granting Hobson's motion to withdraw. ECF No. 113.

On May 30, 2023, the Court entered its order directing Recovco to obtain counsel on or before July 1. ECF No. 115. If counsel did not file an appearance on behalf of Recovco, the Court required Recovco to appear and show cause on July 18, 2023 why the Court should not strike Recovco's motion to dismiss and direct the Clerk of Court to enter default against Recovco. Id. at 4. No counsel filed an appearance on behalf of Recovco as directed by the Court, and the Court entered its further order directing the Clerk to enter default without further notice or hearing if no appearance were filed by counsel for Recovco within 30 days of the show cause

hearing.[4]  ECF No. 120.  The order further provided that Plaintiff would have 14 days from the entry of default to file an appropriate document seeking any further relief as a result of the entry of default.  Id. at 3.  On August 23, 2023, the Clerk entered default against Recovco.  ECF No. 125.  On September 20, 2023, Plaintiff filed its Motion for Default Judgment.  ECF No. 130.  All matters are now ripe for adjudication.

### III. Facts[5]

Plaintiff is an experienced real estate investor and has a law degree.  ECF No. 51, ¶¶ 34, 35, 241.  Plaintiff married Melodie Howard ("Howard") in 2014.  Id. ¶ 37.  During the marriage, Plaintiff individually filed a previous case under chapter 13 and received a discharge in 2015.  Id. ¶ 36.  In the summer of 2018, Plaintiff purchased three rental properties as follows: 1234 Carondelet Street, New Orleans, Louisiana (the "New Orleans Property"); 23252 Sudie Payne Road, Rodanthe, North Carolina (the "Rodanthe Property"); and 442 Aldridge Road, Banner Elk, North Carolina (the "Banner Elk Property") (together the "Properties").  Id. ¶ 38.  Plaintiff "founded his solely-owned company, Flagship

---

[4] The Order further provided that if no appearance were timely filed, the Court would strike Recovco's motion to dismiss.  ECF No. 120.  No appearance was filed thereafter, and the motion has been stricken.

[5] The Court has accepted Plaintiff's factual allegations as true for purposes of Defendants' Motions to Dismiss, except those allegations that are contradicted or matters of which the Court may take judicial notice.  See infra Section IV.

Vacation Properties, LLC ("Flagship"), which operates the Properties as Short Term Vacation Rentals." Id. ¶ 39. In September of 2018, Plaintiff purchased a fourth property ("the Bald Head Property"). Id. ¶ 38.

### A.   Recovco[6]

Recovco did not advance a loan secured by the Bald Head Property and stated to Plaintiff that "'the changing nature of the shoreline on Bald Head Island violated Fannie Mae underwriting guidelines.'" Id. ¶ 45. Due to Plaintiff's previous bankruptcy, Recovco[7] stated that Plaintiff could obtain a more favorable interest rate on the loans for the Properties if only Howard signed the Notes, even though the Properties were titled jointly. Id. ¶¶ 47-48. Despite not being a signatory on the Notes, only Plaintiff

---

[6] Paragraphs 12-33 of the Amended Complaint purport to be a "Summary of the Complaint." These paragraphs contain allegations regarding unrelated proceedings against non-party banks and conclusory allegations that the Court need not accept as true, including without limitation, that "Recovco was formed largely to find new ways around the laws and regulations," "Recovco has acted in concert with others, including the Defendants in this case, to implement a loan-to-own mortgage scheme and perpetrate fraud on borrowers." ECF No. 51, ¶ 22. The Amended Complaint does not contain any allegations of fact related to these conclusory statements. The summary similarly states that Recovco and Specialized fraudulently induced Plaintiff to enter into the loans, and "materially misrepresented the nature of the loans." Id. ¶ 25. The Court will discuss the specific factual allegations that Plaintiff has alleged support these conclusory statements below, but the Court has not and should not accept these summary statements as true for purposes of considering the motions to dismiss. See infra Section IV.

[7] The Amended Complaint does not specify who at Recovco made this suggestion. However, Plaintiff alleges that, "[d]uring the loan origination process, [he] worked with" Nick Dempsey and Dan Leanna, whom he alleges were agents of Recovco, and communicated with "Recovco through mail, commercial carrier, email, and telephone." ECF No. 51, ¶ 42. The Court has liberally construed the allegation to state that this suggestion was made by Dempsey or Leanna, but even so, such an allegation still fails to identify the speaker with respect to any of the specific statements, except as noted herein.

communicated and negotiated with Recovco regarding the origination

of the loans and the loan terms.  Id. ¶¶ 49-50.  Plaintiff used

his own funds for the down payments and closing costs for the

Properties.  Id. ¶¶ 38, 48.  During the origination process,

Recovco stated that changes to the loan terms required investor

approval, and that the investors "were integrally involved in the

origination process."  Id. ¶ 52.

On May 30, 2018, Howard executed an Interest Only Fixed Rate

Note (the "NO Note") in favor of Recovco in the amount of

$497,872.00.  Claim 7-1 (the "NO Claim"),[8] Part 2.[9]  Howard is the

---

[8] Specialized filed Claim 7-1 on behalf of the creditor, "HOF I Grantor Trust 5, U.S. Bank Trust National" on April 25, 2022.  On July 30, 2022, U.S. Bank Trust Nat'l Assoc., as trustee of HOF I Grantor Trust 5, filed a notice of transfer of the NO Claim to it from HOF I Trust 5, U.S. Bank Nat'l Assoc. as Del. Trustee.  Case No. 22-50065, ECF No. 235.  Neither the transferee, nor the transferor of the NO Claim is a party to this adversary proceeding, and Plaintiff has not moved to amend the complaint to add the claimant, despite the identification of the proper claimant no later than July of 2022 and despite claimant's motion to dismiss under Rule 12(b)(4) based on the omission filed in October of 2022.  ECF No. 89.

[9] "A court may take judicial notice of its own records."  Watkins v. Wells Fargo Bank, No. 3:10-1004, 2011 U.S. Dist. LEXIS 20295, at *10 (S.D. W. Va. Feb. 28, 2011); see, e.g., Anderson v. Fed. Deposit Ins. Corp., 918 F.2d 1139, 1141 n.1 (4th Cir. 1990) (finding that a district court "should properly take judicial notice of its own records" at the motion to dismiss stage); see also Fed. R. Evid. 201(c).  "Both the Supreme Court of the United States and the Fourth Circuit have found that courts may take judicial notice of items or matters in the public record, even at the 12(b)(6) stage of a proceeding."  Watkins, 2011 U.S. Dist. LEXIS at *10; see Papasan v. Allain, 478 U.S. 265, 269 n.1 (1986); Sec'y of State for Def. v. Trimble Navigation Ltd., 484 F.3d 700, 705 (4th Cir. 2007).  The Court will take judicial notice of the proofs of claims and the notes, mortgage, deeds of trust, and other loan documents attached to the claims filed for the Properties.  The Court also will take judicial notice of the cash collateral motions and orders entered in this case.  Plaintiff treated Flagship income as inuring solely to his benefit during the bankruptcy case.  See ECF Nos. 65, 79, 109, 277, 292, 293, 296 & 319 (and related orders).  Flagship, in turn, had no income other than rental from the acquired properties.  Plaintiff's only revenue was from Flagship, sale of the properties, and child support.  Id.

sole signatory on the NO Note.  Id.  The note is secured by a mortgage, executed by Plaintiff and Howard in favor of Mortgage Electronic Registration Systems, Inc., solely as nominee for Recovco, its successors and assigns (the "NO Mortgage").  Id.

On June 28, 2018, Howard executed an Interest Only Fixed Rate Note (the "BE Note") in favor of Recovco in the amount of $466,750.00.  Claim 6-1 (the "BE Claim"),[10] Part 2.  As with the New Orleans Property, only Howard executed the note.  The Note is secured by a Deed of Trust executed by Plaintiff and Howard (the "BE Deed of Trust").  Id.  On the same date, Recovco executed an Allonge of the Rodanthe loan to Sprout Mortgage Corp. ("Sprout") without recourse, and Sprout similarly executed an Allonge in blank.  Id. at 17-18.  DLJ is the current holder of the BE Claim. Id. at 1, 45.  There is no objection to Claim 6-1, and Plaintiff voluntarily dismissed all claims against DLJ and its servicer, Selene.  ECF No. 102.[11]

On July 26, 2018, Howard executed an Interest Only Fixed Rate Note (the "Rodanthe Note") (collectively, the NO, BE, and Rodanthe Notes, the "Notes") in favor of Recovco in the amount of

---

[10] Selene filed the BE Claim on behalf of the creditor DLJ Mortgage Capital, Inc. ("DLJ").  Plaintiff has voluntarily dismissed all claims against Selene and DLJ, and there is no pending objection to the claim.

[11] Plaintiff purported to dismiss "U.S. Bank Trust National Association, Inc. ("US Bank"), as Trustee for Cabana Series Trust."  Id.  According to the Rodanthe Claim, US Bank is neither the trustee, nor the servicer for the Rodanthe Claim. Regardless, Plaintiff dismissed all claims against US Bank as putative trustee, DLJ, and Selene.

$441,600.00.  Claim 8-2 (the "Rodanthe Claim"), Part 2.  As with the other two properties, only Howard executed the note.  <u>Id.</u>  The Rodanthe Note is secured by a Deed of Trust executed by Plaintiff and Howard (the "Rodanthe Deed of Trust").  <u>Id.</u>  On the same date, Recovco executed an Allonge of the Rodanthe loan to Sprout without recourse, and Sprout similarly executed an Allonge in blank.  <u>Id.</u> at 13-14.  U.S. Bank Trust National Association, as Trustee of Cabana Series V Trust ("Cabana Trust") is the current holder of the Rodanthe Claim.  <u>Id.</u> at 1, 45-46.  There is no pending objection to Claim 8-2, and Plaintiff has not asserted any claim for relief against Cabana Trust in this proceeding.  Plaintiff voluntarily dismissed all claims against the servicer of the Rodanthe loan, SN.  ECF No. 102.

Each loan is secured by a Mortgage or Deed of Trust.  Each of the Deeds of Trust provides:

> The Note <u>or a partial interest</u> in the note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower.  A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law.

BF Claim, p. 23, ¶ 20; NO Claim, p. 21, ¶ 20, Rodanthe Claim, p. 22, ¶ 20 (emphasis added).

## B. Specialized

In late summer 2018, Specialized began servicing all three of

Recovco's loans.[12]  ECF No. 51, ¶ 54; ECF No. 84, at 5.  Shortly after Specialized began servicing the loans, Plaintiff received notice that Recovco sold the loans for the Properties to HOF Legal Title Trust.  ECF No. 51, ¶ 57.  Soon after Plaintiff received this notice, Hurricane Florence made landfall and "destroyed much of the in-process foundation work at the Banner Elk Property." Id. ¶ 59.  A month later, "Hurricane Michael destroyed the quarter-mile long access road to the Rodanthe Property, effectively eliminating that rental as a source of income as well."  Id. ¶ 60. Neither the damage to the Banner Elk property nor the access road were covered by insurance.  Id. ¶ 61.

On November 9, 2018, Plaintiff contacted Specialized, seeking to make arrangements regarding payments.  Id. ¶ 67.  A representative from Specialized[13] instructed Plaintiff to submit a Request for Mortgage Assistance ("RMA") Packet.  Id. ¶ 68. Plaintiff submitted a hardship letter on November 14, 2018, an RMA Packet on November 30, 2018, and received a confirmation of receipt for both.  Id. ¶ 71.  On November 15, 2018, the day after he submitted the hardship letter, Plaintiff defaulted on payments under the Rodanthe Note and the BE Note.  Id. ¶ 76.  Plaintiff

---

[12] Specialized serviced the loans secured by the Rodanthe Property and the Banner Elk Property for over a year.  Specialized continues to service the loan secured by the New Orleans Property.

[13] The Amended Complaint does not identify anyone at Specialized with whom Plaintiff communicated.

defaulted on the NO Note on December 15, 2018. Id. ¶ 77. Relying on the "arrangement" with the unrelated lender and servicer for the Bald Head Property, and assuming that "he and Specialized would come to a similar resolution within 30-60 days," Plaintiff began making repairs to the Properties using his own personal finances and Flagship finances. Id. ¶ 72. Notwithstanding Plaintiff's beliefs and assumptions regarding potential "arrangements," on December 19, 2018, 19 days after receiving confirmation that his hardship letter had been received, Specialized gave notice of demand and encouraged him to seek loss mitigation options. Id. ¶ 78. On December 29, 2018, Specialized gave Plaintiff notice of foreclosure under the BE and Rodanthe Deeds of Trust, and that any cure would require payment of the full default balance, including fees and late charges. Id. ¶ 80. Shortly thereafter, Plaintiff received similar notice regarding the NO Mortgage. Despite these notices, Plaintiff continued to use his funds to upgrade and improve the Properties. Up to the date of the filing of the Amended Complaint,[14] Plaintiff alleges that he spent hundreds of thousands of dollars on physical improvements to the properties and that these improvements created additional equity in the

---

[14] Plaintiff continued funding improvements to some of the properties even during the bankruptcy case, as evidenced by the various approved budgets in connection with the use of cash collateral. In order to fund these improvements, Plaintiff used the rental income from the Properties, which constituted cash collateral of the lenders. See ECF Nos. 65, 79, 109, 277, 292, 293, 296 & 319 (and related orders).

Properties.  Id. ¶¶ 74-75.  On December 29, 2018, less than thirty days after he sent his RMA packet, Plaintiff received a letter from Specialized notifying him that they had invoked North Carolina's and Louisiana's "default provisions, and foreclosed any payment on the loan other than the full default balance plus rapidly-accruing late fees and charges."  Id. ¶ 80.

Throughout December and January, Specialized informed Plaintiff that they did not receive the RMA application.  Id. ¶ 82.  In response, Plaintiff filed multiple RMA applications and contacted Specialized to ensure they received the application.  On or about February 25, 2019, Plaintiff contacted Specialized.  The Specialized representative indicated that it was "standard procedure" for a single point of contact to be designated once an RMA was submitted, but that one had not been so designated, and that all three loans had been designated for foreclosure.  The representative also provided Plaintiff with the names of the attorneys handling the foreclosures.  Id. ¶ 89-90.  Plaintiff contacted the attorney handling the North Carolina foreclosures, forwarded the RMA to the attorney, and was informed by the attorney that "all 3 foreclosure proceedings were on hold, based on the RMA Application . . . ."  Id. ¶¶ 91-93.  On May 7, 2019, Plaintiff received an email from a Recovco representative, inquiring about the status of the loans.  Id. ¶ 106.  In response, Plaintiff told the representative to review the communications with Specialized.

14

A Recovco representative informed Plaintiff that Recovco could not help him with loan modification and that all communications must go to Specialized, who was servicing the loans at that time. Id. ¶¶ 106-08. On May 22, 2019, Plaintiff contacted Specialized; and a representative informed him that the loans were in foreclosure, but the sale date had not been set. The representative referred him to the "Loss Mitigation Department." Id. ¶¶ 112-15. When he called the number provided, the automated system terminated the call and did not permit him to speak with a person, stating that it could not authenticate the account with either his or his wife's social security numbers. Id. ¶ 121. On June 29, 2019, Specialized informed Plaintiff that they received the RMA application, but it was incomplete. Id. ¶¶ 123-25.

At some point approximately six months after May 20, 2019, Plaintiff alleges that he learned that the securitization of the loans prevented any modification. Id. ¶¶ 109-10.

In late 2019, Plaintiff and Howard separated. Id. ¶ 161; ECF No. 100, at 6. Plaintiff attempted to sell the New Orleans Property, but the sale failed. ECF No. 51, ¶ 162.

On June 1, 2020, Howard filed a petition under chapter 7 in the United States Bankruptcy Court for the Middle District of North Carlina. Case No. 20-10498, ECF No. 1. Prior to the commencement of Howard's bankruptcy case, Specialized ceased servicing the loans related to the Banner Elk Property and the Rodanthe Property.

ECF No. 51, ¶ 169.   During Howard's case, Plaintiff received letters from Specialized informing him that the RMA submissions were incomplete, but not identifying any specific deficiencies. Id. ¶¶ 123-27.

On October 9, 2019, during the foreclosure process in Louisiana, Plaintiff informed New Orleans counsel for Specialized of the RMA applications and his correct addresses.   Id. ¶ 140. Despite this information, counsel for Specialized represented to the Louisiana court that Plaintiff resided at the New Orleans Property, and that Plaintiff's "current whereabouts are unknown." Id. ¶ 142.

### C.   Fay

Fay began servicing the loans related to the Rodanthe Property and the Banner Elk Property prior to the commencement of Howard's chapter 7 bankruptcy case.   Id. ¶ 160.   On May 23, 2020, a water leak caused damage to the New Orleans Property.   Id. ¶ 179. Plaintiff and Flagship made the repairs which cost around $10,000.00.   Id.

### D.   Howard's Bankruptcy Case

During the Howard bankruptcy case, Specialized and Fay filed motions for relief from stay regarding the Properties on behalf of the holders of the Notes.   Case No. 20-10498, ECF Nos. 9 & 14. Plaintiff objected to the motions.   Case No. 20-10498, ECF Nos. 26 & 27.   At the initial hearing on the motions for relief from stay,

counsel for Plaintiff indicated that Plaintiff was interested in buying Howard's interest in the properties from the estate and that Plaintiff would "like to provide some adequate protection for the creditors." Case No. 20-10498, ECF No. 29, 3:55-4:12.[15]  On those conditions, the creditors consented to a continuance of their respective motions for relief from stay for 30 days and the Court provided that the automatic stay would remain in place.  Id. at 4:12-5:05.  The day prior to the continued hearings, the chapter 7 trustee filed a motion to sell Howard's interests in the Properties and Flagship.  Case No. 20-10498, ECF No. 36.  At the continued hearing on the motions, the chapter 7 trustee reported that he believed that there was equity in the Properties for the estate, and that he was attempting to sell Howard's interest in the Properties and in Flagship.  Case No. 20-10498, ECF No. 38, 0:00-3:24.  Counsel for Fay requested a continuance to the date of the sale to have an opportunity to review Plaintiff's proposal with respect to the BE Note and the Rodanthe Note, to clarify Plaintiff's offer, and to consider the adequate protection offered by Plaintiff.  Id. at 5:12-7:40.  Counsel for Specialized did not consent to the continuance, even though she conceded there was

---

[15] Plaintiff alleges that Defendants demanded adequate protection payments and justified those demands by undervaluing the properties to this Court.  ECF No. 51, ¶¶ 165-66.  As reflected in the excerpts cited herein, along with the related filings in the Howard bankruptcy case, these allegations are contrary to the records of this Court, and the Court has not accepted them as true.

equity in the New Orleans Property. Id. at 7:40-11:17. The trustee reported that, although the New Orleans Property had been under contract for approximately $800,000.00, it did not close, "perhaps because of appraisal issues." Id. at 12:00-12:46. In light of the trustee's comments, the Court granted a further continuance for another month, finding that it appeared there was value in the Properties over and above the amount of the debt. Id. at 13:31-14:57. The Court thereafter approved the trustee's sale. Case No. 20-10498, ECF No. 55. The sale order required that the trustee close on or before October 23, 2020. Id. Plaintiff was unable to close on the transaction with the trustee prior to October 23, 2020. Case No. 20-10498, ECF No. 77, 2:10-2:13. On October 23, 2020, Plaintiff filed a status report requesting further continuances, attaching listing agreements for the Properties at prices that would reflect substantial equity. Case No. 20-10498, ECF No. 76. In the ensuing months, the Court entered numerous orders continuing the hearings on the motions for relief from stay and requiring continued adequate protection payments. Case No. 20-10498, ECF Nos. 68, 71, 72, 78, 80 & 81.

Plaintiff eventually consummated his purchase of Howard's interests in the Properties. ECF No. 51, ¶ 164, ECF No. 67, at 4; see Case No. 20-10498, ECF No. 55. The Court authorized the trustee "to sell the Jointly Owned Properties and Flagship to [Plaintiff] under the Purchase Agreement" and "to sign documents

18

as needed with respect to the sales under the Purchase Agreement including signing deeds, signing all sale and transfer documents in ordinary form, and signing all lien affidavits, closing statements and other closing documents as are customary in real estate closing transactions[.]"  Case No. 20-10498, ECF No. 55. On September 14, 2020, Howard received her discharge.  Case No. 20-10498, ECF No. 67.  Plaintiff did not assume the liability under any of the promissory notes and did not receive an assignment of any contract or other claim for relief from Howard through her bankruptcy estate.  Case No. 20-10498, ECF No. 55.[16]

The motions for relief from stay were ultimately denied as moot because the trustee consummated the sale of the estate's interests to Plaintiff, and the Properties ceased to be protected by the automatic stay under 11 U.S.C. § 362(c)(1).  Id.; ECF Nos. 96, 98 & 99.  Plaintiff alleges that Specialized did not accept adequate protection payments tendered by Plaintiff during the pendency of Howard's bankruptcy case.  ECF No. 51, ¶ 171.  Fay

---

[16] Prior to the Court striking its motion to dismiss, Recovco repeatedly implied in its arguments that Plaintiff purchased "the notes."  See, e.g., ECF No. 84-1, at 2 ("since assuming responsibility of payments on the notes"); id. at 6 ("assuming Ms. Howard's obligations for the Notes"); id. at 26 ("his decision to take over the debt on the Notes"); id. at 27 (conditionally arguing against any standing arising from Plaintiff's "purchase of the Loans").  Plaintiff has not alleged, and this Court did not approve Plaintiff's acquisition of any interest in the Notes, or any claims arising from the Notes or the "Loans." Plaintiff merely acquired Howard's interests in the Properties and Flagship. Moreover, to the extent that Howard held any claims against Defendants, any such claims were not listed in her bankruptcy schedules, and therefore remain property of the bankruptcy estate in her closed case.  See In re Hamlett, 304 B.R. 737 (Bankr. M.D.N.C. 2003).

accepted the payments but did not credit the payments to the account.  Id. ¶ 173.[17]

In September 2021, the North Carolina Farm Bureau, the carrier of the flood insurance policy on the Rodanthe Property, informed Plaintiff that Fay "had failed to submit payment in April 2020 and the policy had thus lapsed (and was, by 2021, unappealable)."  Id. ¶¶ 182-84.  Plaintiff alleges that the loss of the flood insurance required Plaintiff to obtain a different policy at a higher cost, which adversely affected the value of the Rodanthe Property.  Id. ¶¶ 185-86.

**E.   Selene**

On April 5, 2021, Fay transferred servicing for the BE Note to Selene.  ECF No. 51, ¶¶ 187, 202; ECF No. 67, at 5.  On June 8, 2021, in response to the foreclosure sale process restarting on the Rodanthe Property, Plaintiff filed a complaint in Dare County against Selene and Specialized "seeking injunctions on [the sale of the Rodanthe Property], quiet title, and damages."  ECF No. 51, ¶ 192; ECF No. 90, at 6.  On November 29, 2021, Plaintiff filed a similar suit in the Orleans Parish Civil District Court against Specialized and HOF I Legal Title Trust 3 regarding the New Orleans

---

[17] In addition to this adversary proceeding, Plaintiff filed objections to the NO Claim, Case No. 22-50065, ECF Nos. 133 & 154, the BE Claim, ECF No. 134, and the Rodanthe Claim.  ECF Nos. 132 & 153.  Plaintiff withdrew all his objections to the claims, relying only on the claims for relief asserted in this proceeding. ECF Nos. 228 (NO Claim), 196 (BE Claim) & 256 (Rodanthe Claim).  Plaintiff has not challenged the calculation of the claims in this adversary or requested an accounting.

Property.    ECF No. 51, ¶ 192; ECF No. 90, at 6.    Specialized removed the case to federal court.    ECF No. 90, at 6.

In the fall of 2021, Plaintiff reached an agreement with the counsels of Selene and Specialized.    ECF No. 51, ¶ 193.    Selene and Specialized agreed to suspend the foreclosure action on the Rodanthe Property and not to file a foreclosure on the Banner Elk Property and the New Orleans property.    Id. ¶ 194.    In return, Plaintiff agreed to "dismiss the Dare County suit without prejudice and sell the Banner Elk Property, which would generate sufficient funds to resolve the default on all three loans, and likely enough funds to resolve the entire matter on all three loans."    Id. ¶ 195.    On December 6, 2021, Plaintiff secured a contract to sell the Banner Elk Property.    Id. ¶ 198.    On December 13, 2021, Plaintiff filed a voluntary dismissal of both cases without prejudice.    Id. ¶ 195; ECF No. 90, at 6.

Plaintiff alleges that, after reviewing the sale contract for the Banner Elk Property, Selene and Specialized instructed their counsel to schedule the foreclosure sale of the Rodanthe Property and to initiate foreclosure proceedings on the Banner Elk Property. ECF No. 51, ¶ 199.    Shortly thereafter, the Banner Elk buyer terminated the contract.    Id. ¶ 200.    The buyer received notice of the pending foreclosure.    Id.

On February 4, 2022, Fay transferred the Rodanthe Property to Selene.    Id. ¶¶ 187, 202; ECF No. 67, at 5.    Also on February 4,

Selene and Specialized conducted a foreclosure sale on the Rodanthe Property.  ECF No. 51, ¶ 202.  On February 11, 2022, Plaintiff filed suit in Dare County, pro se, seeking the same relief as he sought in the previous case he dismissed.  Id. ¶ 203; ECF No. 90, at 7.

### F.   Debtor's Bankruptcy case

On February 14, 2022, during the upset bid period of the foreclosure sale on the Rodanthe Property, Plaintiff filed a petition under chapter 11 of title 11, and elected to proceed under subchapter V.  Case No. 22-50065, ECF No. 1.  Selene filed a proof of claim in the amount of $580,319.17.  Case No. 22-50065, Claim No. 6.  Specialized and HOF I Grantor Trust 5 filed a proof of claim in the amount of $661,064.91, "consisting of $497,872.00 as the original principal balance, $114,524.26 in accrued interest, and $48,668.65 in 'Other Fees.'"  ECF No. 51, ¶ 213; Case No. 22-50065, Claim No. 7.  SN Servicing filed a proof of claim in the amount of $562,699.48.  Case No. 22-50065, Claim No. 8.[18]  Fay and Recovco did not file a proof of a claim in the bankruptcy case.

On November 23, 2022, the Court confirmed Debtor's plan under § 1191(a).  Case No. 22-50065, ECF No. 333.  Under the Plan, the

---

[18] The Amended Complaint states in its Factual Background section, "[i]n addition to Plaintiff disputing the validity of the entire claims under this Adversary Proceeding, Plaintiff also objects to accounting errors in these claims."  ECF No. 51, ¶ 214.  Plaintiff's claims for relief are addressed in turn in this memorandum opinion.  None of Plaintiff's claims for relief request an accounting or aver that any claim is valid but has a different value.

NO Claim is treated as a secured claim under Class 4.  <u>Id.</u>  The plan provides:

> Debtor's counsel shall retain in trust 18 months of interest payments on the principal amount of $497,872.00 (as listed in Creditor's Proof of Claim) at the Existing Note Rate of 7% APR thus $52,276.50 as Adequate Protection of Creditor's claim during the pendency of the Adversary Proceeding supplementing protection already afforded by both physical and commercial equity in the property. . . Debtor's counsel shall disburse monthly tax and insurance payments to Creditor in the amount of $5,674.61 (this payment includes 1/12 of the arrearage [$4,348.79] plus the escrow-only payment of $1,325.82) (the "Escrow Arrears Payment").

<u>Id.</u> at 12-13.  The Plan further provides that Plaintiff will disburse monthly tax and insurance payments to the creditor, and that, upon final order in this proceeding, Plaintiff will pay the amount of the loan determined in this adversary proceeding, including any allowed fees and costs.  <u>Id.</u>

## IV.  Standard of Review

Fay and Specialized contend that the Amended Complaint should be dismissed under Fed. R. Civ. P. 12(b)(6), made applicable to this proceeding by Bankruptcy Rule 7012.  Rule 12(b)(6) requires dismissal of all or part of a complaint if it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

Plaintiff seeks default judgment against Recovco.  Upon default, all allegations in the complaint are accepted as admitted, and the Court must determine in its discretion whether to grant Plaintiff default judgment based on the allegations.  <u>Silvers v. Iredell Cnty. Dep't of Soc. Servs.</u>, No. 5:15-CV-00083-RLV-DCK,

2016 WL 427953, at *3-4 (W.D.N.C. Feb. 3, 2016) ("entry of default judgment is left to the sound discretion of the court and no party is entitled to a favorable judgment as a matter of right;" recognizing the "'strong policy' of the Fourth Circuit to decide cases on the merits"), aff'd 669 Fed. Appx. 182 (4th Cir. Oct. 17, 2016).   The defaulting defendant admits only the well-pleaded factual allegations of the complaint, but not conclusory statements or conclusions of law.   Id.   For this reason, a motion for default judgment under Fed. R. Civ. P. 55, made applicable to this adversary proceeding by Fed. R. Bankr. P. 7055, is considered under the same standards as a motion to dismiss under Rule 12(b)(6).   Id. at *5.   Accordingly, where the Court finds that Plaintiff's factual allegations fail to state a claim upon which relief may be granted, the Court will both deny Plaintiff's Motion for Default Judgment and dismiss the claim.   See Altes v. Pride Ctr. of Md., Inc., No. CV JKB-23-1033, 2023 WL 6143414, at *3 (D. Md. Sept. 20, 2023); United States ex rel. Lesnik v. Eisenmann SE, No. 16-CV-01120-LHK, 2021 WL 4243399, at *11 (N.D. Cal. Sept. 17, 2021); Moore v. United Kingdom, 384 F.3d 1079, 1090 (9th Cir. 2004).

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a complaint.   Randall v. United States, 30 F.3d 518, 522 (4th Cir. 1994) (citing Schatz v. Rosenberg, 943 F.2d 485, 489 (4th Cir. 1991)).   The standards set forth in Bell Atl.

24

Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 556 U.S. 662 (2009), guide the Court in determining whether to dismiss a complaint for failure to state a claim. "When considering a Rule 12(b)(6) motion to dismiss, the court must accept as true all of the well-pleaded factual allegations contained within the complaint and must draw all reasonable inferences in the plaintiff's favor, Hall v. DIRECTV, LLC, 846 F.3d 757, 765 (4th Cir. 2017), but any legal conclusions proffered by the plaintiff need not be accepted as true, Iqbal, 556 U.S. at 678." Staffing Advantage LLC v. Definitive Staffing Sols., Inc., No. 7:20-cv-00150-M, 2021 U.S. Dist. LEXIS 110673, at *6 (E.D.N.C. June 11, 2021). Although a court must liberally construe and accept as true allegations of fact in the complaint and inferences reasonably deductible therefrom, the court does not accept "facts which run counter to facts of which the court can take judicial notice, conclusory allegations, unwarranted deductions, or mere legal conclusions asserted by a party." Campos v. I.N.S., 32 F. Supp. 2d 1337, 1343 (S.D. Fla. 1998) (citations omitted)

A complaint should survive a motion to dismiss if it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570).

> The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where

25

> a complaint pleads facts that are "merely consistent
> with" a defendant's liability, it "stops short of the
> line between possibility and plausibility of
> 'entitlement to relief.'

Id. (citations omitted).  Allegations of fact must further be sufficiently specific to identify to whom they refer.  If a complaint contains numerous references to "defendants," which refer at times to a certain group of defendants while at other times referring to other groups of defendants, then the complaint may be impermissibly vague with respect to any claims levied against the ambiguous groups of "defendants."  Such a complaint "fails to provide each Defendant the factual basis for the claim(s) *against him or it* and therefore deprives them and the court of the opportunity of determining whether there are sufficient facts to make the claim against each Defendant plausible . . . ."  Luna-Reyes v. RFI Constr., LLC, 57 F. Supp. 3d 495, 503-04 (M.D.N.C. 2014).[19]

Rule 8(a)(2) requires a claim for relief to contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  This rule demands a plaintiff provide "enough facts to state a claim to relief that is plausible on its face," and involves pleading more than "labels [or] conclusions" or a "formulaic recitation of the elements of a

---

[19] Despite Specialized raising this issue in its motion to dismiss the original complaint, Plaintiff did not provide further specificity in the Amended Complaint.  See ECF No. 35, at 9-10.

26

cause of action." Twombly, 550 U.S. at 555, 570; Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (citing the same). Factual allegations must be sufficient to raise the right to relief above the speculative level. Twombly, 550 U.S. at 555. The plaintiff's complaint should include "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. Therefore, the Court must determine whether Plaintiff pled sufficient and plausible factual allegations regarding each claim.

### A.   Choice of Law

"For claims brought under state law in a bankruptcy adversary proceeding, federal courts apply the choice of law rules of the forum state where the court sits absent a compelling federal interest that dictates otherwise." Crawford v. Patrick Hosp. Inv'rs, LLC (In re PCH Operations, LLC), Nos. 09-50697, 10-05067, 11-05023, 2016 Bankr. LEXIS 4163, at *23 (Bankr. W.D.N.C. Dec. 6, 2016); see also In re Wysong & Miles Co., No. 04-10005, 2005 WL 3723200, * 6 (Bankr. M.D.N.C. Dec. 29, 2005) (citing In re Merrit Dredging Co., 839 F.2d 203, 206 (4th Cir. 1988), cert. denied, 487 U.S. 1236, 108 S. Ct. 2904, 101 L.Ed.2d 936 (1988)). Therefore, North Carolina choice of law principles govern the claims in this proceeding.

### 1. Contractual Claims

"For contractual claims, North Carolina courts generally apply the law of the place where the contract was made." Synovus Bank v. Coleman, 887 F. Supp. 2d 659, 668 (W.D.N.C. 2012); see Norman v. Tradewinds Airlines, Inc., 286 F. Supp. 2d 575, 584 (M.D.N.C. 2003). When the contracting parties "have agreed 'that a given jurisdiction's substantive law shall govern the interpretation of the contract, such a contractual provision will be given effect.'" Coleman, 887 F. Supp. 2d at 668 (quoting Tanglewood Land Co. v. Byrd, 299 N.C. 260, 262, 261 S.E.2d 655, 656 (1980)). In this case, both North Carolina and Louisiana substantive law apply to any contractual claims. The BE and Rodanthe Deeds of Trust and the NO Mortgage each provides that "[t]his Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located." Rodanthe Claim, Part 2, ¶ 16; BE Claim, Part 2, ¶ 16; NO Claim, Part 2, ¶ 16. Therefore, North Carolina law applies to substantive contractual claims related to the Banner Elk documents and the Rodanthe loan documents, and Louisiana law applies to substantive contractual claims related to the New Orleans loan documents.[20] However, Plaintiff's ninth claim for relief attempts to assert a

---

[20] None of the Notes contains a choice of law provision. The parties, however, do not dispute that the contractual law of the state in which each property sits applies to any contract claims. And in any event as discussed below, Plaintiff was not a party to the Notes.

breach of contract claim against Specialized and Fay with respect to a putative settlement agreement entered between Plaintiff and Defendants' North Carolina counsel. ECF No. 51, ¶¶ 308-16. Both Plaintiff and the parties alleged to have entered into that agreement in North Carolina, and the Court will apply North Carolina law to Plaintiff's ninth claim for relief.

### 2. Tort Claims

Contractual choice of law provisions, such as the ones in the Deeds of Trust, which merely provide for the instruments to be governed by the laws of a particular state will not control the choice of law for purposes of tort claims which seek to impose liability for acts "separate and distinct" from the instruments themselves. ITCO Corp. v. Michelin Tire Corp., Comm. Div., 722 F.2d 42, 49 n.11 (4th Cir. 1983). Accordingly, with respect to the tort claims asserted in the Amended Complaint, the Court must apply North Carolina's choice of law principles. "For tort claims, North Carolina uses the law of the situs, or 'lex loci,' test to determine the choice of law." Lamie v. LendingTree, LLC, No. 3:22-cv-00307-FDW-DCK, 2023 WL 1868198, at *4 (W.D.N.C. Feb. 9, 2023); see Boudreau v. Baughman, 322 N.C. 331, 335, 368 S.E.2d 849, 853-54 (1988); Harco Nat'l Ins. Co. v. Grant Thornton LLP, 206 N.C. App. 687, 698 S.E.2d 719, 722 (2010). "[T]he state where the injury occurred is considered the situs of the claim." Boudreau, 322 N.C. at 335; see Martin v. Bimbo Foods Bakeries

Distrib., LLC, No. 5:15-CV-96-BR, 2015 U.S. Dist. LEXIS 53898, at *8 (E.D.N.C. Apr. 24, 2015) ("North Carolina courts apply the *lex loci delicti* doctrine to actions sounding in tort, which requires application of the law of the state where the injury occurred."). The place of the wrong "is defined as the place where 'the last event necessary to make an act liable for an alleged tort takes place.'" Quillen v. Int'l Playtex, Inc., 789 F.2d 1041, 1044 (4th Cir. 1986) (quoting Miller v. Holiday Inns, Inc., 436 F. Supp. 460, 462 (E.D. Va. 1977)). In this case, any injury suffered by Plaintiff as a result of tortious conduct of any of the defendants is indelibly linked with Plaintiff's ownership interest in particular property. Accordingly, the situs for each individual tort claim is the location of the property, over which Plaintiff's ownership rights were purportedly affected as a result of any defendant's alleged tortious conduct. In simple terms, the Court will analyze tort claims alleged to have affected Plaintiff's interests in North Carolina property under North Carolina law and will analyze tort claims alleged to have affected Plaintiff's interest in Louisiana property under Louisiana law.

## V. Discussion

### A. Claims Against Recovco

In its stricken motion, Recovco asserted that Plaintiff lacked standing. ECF No. 84-1, at 11-13. Because standing is an issue of subject matter jurisdiction, the Court must address

standing.  Whitmore v. Arkansas, 495 U.S. 149, 154 (1990) ("[B]efore a federal court can consider the merits of a legal claim, the person seeking to invoke the jurisdiction of the court must establish the requisite standing to sue.").

### 1.  Plaintiff has standing.

When the factual basis of subject matter jurisdiction, rather than the facial sufficiency of the pleading itself, is in question, the court can look beyond the pleadings and consider the evidence submitted on the issue to determine whether subject matter jurisdiction exists.  Velasco v. Gov't of Indon., 370 F.3d 392, 398 (4th Cir. 2004); see also Grafon Corp. v. Hausermann, 602 F.2d 781, 783 (7th Cir. 1979); Stayner v. Vill. of Sugar Grove (In re Stayner), 185 B.R. 557, 561 (Bankr. N.D. Ill. 1995).

Standing asks whether a plaintiff presents a "case and controversy."  Lujan v. Defs. of Wildlife, 504 U.S. 555, 559-60 (1992).  As established by the Supreme Court, a "case and controversy" involves three different elements:

> First, the plaintiff must have suffered an "injury in fact" -- an invasion of a legally protected interest which is (a) concrete and particularized, and (b) "actual or imminent, not 'conjectural' or 'hypothetical,'".  Second, there must be a causal connection between the injury and the conduct complained of -- the injury has to be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . the result [of] the independent action of some third party not before the court."  Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

Id. at 559-61 (citations omitted).  Here, the second and third

element were not in dispute for purposes of Recovco's stricken motion to dismiss.  The only disputed issue was whether Plaintiff suffered a concrete and particularized injury-in-fact.

In its stricken motion, Recovco contended that Plaintiff has not suffered an injury because he is not a signatory of the Notes. Nevertheless, the Properties were titled to Plaintiff and Howard. ECF No. 51, ¶ 48.  Plaintiff further alleges that he used his personal funds to acquire and make repairs to the Properties. Howard's interests in the Properties were transferred to Plaintiff during her bankruptcy case.  These interests are sufficient to satisfy the injury-in-fact requirement and confer constitutional standing on Plaintiff.

### 2.  The Amended Complaint fails to allege a plausible constructive fraud claim against Recovco.

Plaintiff's first claim for relief is constructive fraud in connection with the extension of the loans.  Regardless whether North Carolina or Louisiana law applies to the claim for constructive fraud, the Amended Complaint does not plausibly allege the claim.  In North Carolina, "[c]onstructive fraud is based upon a confidential or fiduciary relationship in which the defendant has taken advantage of his position of trust to injure the plaintiff." Baum, 2016 Bankr. LEXIS at *41-42; Forbis v. Neal, 361 N.C. 519, 528, 649 S.E.2d 382, 388 (2007).  Under North Carolina law, a claim for constructive fraud "is governed by Rule

9(b)'s heightened pleading standard." Irwin v. Fed. Express Corp.,
No. 1:14cv557, 2014 U.S. Dist. LEXIS 156504, at *7 (M.D.N.C. Nov.
4, 2014); see Lawley v. Liberty Mut. Grp., Inc., No. 5:11-cv-
00106-RLV-DSC, 2012 U.S. Dist. LEXIS 142205, at *13 (W.D.N.C. Sept.
28, 2012) ("[A]lthough constructive fraud claims must comply with
Rule 9(b), the pleading standard is less exacting than with actual
fraud claims since there is no misrepresentation requirement.").
"While the particularity requirement is governed by Federal Rule
of Civil Procedure 9(b), substantive State law governs the elements
necessary to meet the standard." Irwin, 2014 U.S. Dist. LEXIS at
*8.

> Under North Carolina law, the heightened standard
> for constructive fraud is met when the plaintiff describes
> the circumstances '(1) which created the relation of trust
> and confidence, and (2) [which] led up to and surrounded the
> consummation of the transaction in which defendant is alleged
> to have taken advantage of his position of trust to the hurt
> of plaintiff.'

Id. at *9 (quoting Terry v. Terry, 273 S.E.2d 674, 679 (N.C.
1981)); see also Craft v. Tabor, No. 3:19-CV-469-RJC-DCK, 2021
U.S. Dist. LEXIS 252032, at *23 (W.D.N.C. Mar. 1, 2021) ("[A] claim
for constructive fraud is only viable in the context of a
confidential relationship."). A fiduciary relationship generally
does not arise between a lender and a borrower. Landmar, LLC v.
Wells Fargo Bank, N.A., 978 F. Supp. 2d 552, 567 (W.D.N.C. 2013)
(citing Branch Banking & Trust v. Thompson, 107 N.C. App. 53, 418
S.E.2d 694, 699 (1992) ("The mere existence of a debtor-creditor

relationship between the parties does not create a fiduciary relationship.")).

Accepting all well-pleaded allegations in the Amended Complaint, Plaintiff has not pled any facts showing that a fiduciary or confidential relationship arose between Recovco and himself.  The North Carolina Supreme Court has rejected similar claims between lenders and borrowers.  In Dallaire v. Bank of Am., plaintiffs commenced an action against Bank of America, N.A. ("BOA") alleging negligent representation and breach of fiduciary duty, among other claims.  367 N.C. 363, 760 S.E.2d 263 (2014). In Dallaire, plaintiffs owned a home with three liens, including a senior lien to BOA and a junior lien to Branch Banking & Trust ("BB&T").  Id. at 264.  The plaintiffs later filed bankruptcy and discharged their personal liability on the loans.  Id.  A year after the bankruptcy, BOA offered to refinance the loans, indicating that "the BB&T loan would not be a problem," and assuring the plaintiffs that the BOA loan would be a first priority loan.  Id.  BOA loaned $165,000.00 to the plaintiffs, and the loan agreement provided that the plaintiffs were required to "promptly discharge" any liens which BOA determined would have priority. BOA did not inform the plaintiffs of the BB&T lien.  Id. Thereafter, the plaintiffs learned of the remaining vitality of the BB&T lien, now in first place, and now were liable on the post-bankruptcy loan to BOA.  Id.  They sued BOA, asserting that the

34

loan officer's assurance that BOA would be in first place and that
the BB&T loan "would not be a problem" created sufficient trust
and confidence by the plaintiffs in the bank to create a fiduciary
relationship.  Id. at 265.  The North Carolina Court of Appeals
found that these statements were sufficient to create a question
of fact as to whether "'the circumstances of the parties'
interaction prior to signing the loan gave rise to a fiduciary
relationship and consequently created a fiduciary duty for
Defendant.'"  Id. at 266 (quoting Dallaire v. Bank of Am., 738
S.E.2d 731 (N.C. App. 2012)).  The North Carolina Supreme Court
reversed.  The North Carolina Supreme Court recognized the general
rule that "[o]rdinary borrower-lender transactions . . . are
considered arm's length and do not typically give rise to fiduciary
duties."  Dallaire, 760 S.E.2d at 266 (citations omitted).
"Rather, borrowers and lenders are generally bound only by the
terms of their contract and the Uniform Commercial Code."  Id.
(citation omitted).  The court concluded that the defendant's
knowledge of the plaintiffs' financial circumstances and prior
bankruptcy and the plaintiffs' reliance on the statements provided
by BOA were insufficient to give rise to a fiduciary obligation.

Plaintiff's claims in this case fall similarly short of
plausibly alleging the requisite facts to establish a fiduciary
relationship.  Plaintiff alleges that a relationship of trust and
confidence arose because Plaintiff shared "his financial

situation, his desires for obtaining new properties, his goals for financing those properties, and his marital situation" with Recovco.  ECF No. 51, ¶ 229.  This type of information is provided in virtually every lending situation.  Moreover, "even when parties to an arms-length transaction have reposed confidence in each other, no fiduciary duty arises unless one party thoroughly dominates the other."  <u>Landmar</u>, 978 F. Supp. 2d at 567.  Plaintiff did not allege any facts that any Defendant exercised the requisite control necessary to create a fiduciary relationship.  <u>See</u> <u>id.</u> (The court held that there was no fiduciary duty between the parties because "plaintiffs have made no plausible allegations and presented no evidence that defendant 'thoroughly dominated' them in the transaction.").  If a borrower were able to establish a fiduciary or confidential relationship anytime the borrower shared confidential financial information with a prospective lender, there would be virtually no lending relationship that did not give rise to a fiduciary relationship and the general rule to the contrary would have no application.  Plaintiff has not presented a plausible claim for constructive fraud under North Carolina law.[21]

---

[21] "While determination of a fiduciary relationship is generally a question of fact to be determined by the jury, where plaintiffs fail to disclose facts supporting the existence of a fiduciary relationship, dismissal is proper."  <u>Rose Oil Co. v. PNC Bank, Nat'l Ass'n</u>, No. 5:15-CV-389-FL, 2016 U.S. Dist. LEXIS 10902, at *31 (E.D.N.C. Jan. 29, 2016); <u>see</u> <u>Lynn v. Fannie Mae</u>, 235 N.C. App. 77, 760 S.E.2d 372, 375, 376 (2014).

In Louisiana, "[t]here is no legally cognizable cause of action for constructive fraud." Cope v. Citimortgage, Inc., No. 2:10 CV 922, 2010 U.S. Dist. LEXIS 127354, at *10 (W.D. La. Nov. 30, 2010). "Federal Courts should not recognize claims for relief based upon state law where those claims are previously unrecognized in the applicable state courts." Conti v. Fid. Bank & Assurance Co. (In re NC & VA Warranty Co.), 594 B.R. 316, 354 (Bankr. M.D.N.C. 2018) (and cases cited therein). Even if Louisiana were to recognize a claim for constructive fraud as a claim sounding in a breach of fiduciary obligation, see Cope, 2010 U.S. Dist. LEXIS at *9-10, for the reasons stated above, Plaintiff has not alleged sufficient facts to establish that there was a fiduciary relationship between Recovco and himself. For these reasons, Plaintiff did not present a plausible claim for constructive fraud under North Carolina or Louisiana law. The Motion for Default Judgment is denied with respect to Claim 1 against Recovco, and Claim 1 is dismissed for failure to state a claim upon which relief may be granted.

> **3.   The Amended Complaint does not include sufficient facts, taken as true, to present a plausible fraudulent inducement claim against Recovco under North Carolina or Louisiana law.**

To state a claim for fraudulent inducement under North Carolina law, "a party must allege the following: (1) a false representation or concealment of a material fact, (2) that was

reasonably calculated to deceive, (3) that was made with the intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party." Packrite, LLC v. Graphic Packaging Int'l, Inc., No. 1:17CV1019, 2019 U.S. Dist. LEXIS 113428, at *7-8 (M.D.N.C. July 9, 2019); see TradeWinds Airlines, Inc. v. C-S Aviation Servs., 222 N.C. App. 834, 733 S.E.2d 162, 168 (2012). The representation upon which a fraud claim rests must be "definite and specific," and involve "a subsisting or ascertainable fact, as distinguished from a matter of opinion or representation relating to future prospects." Cabrera v. Hensley, 2012 NCBC LEXIS 41, 64 (N.C. Super. Ct. July 16, 2012) (citing Ragsdale v. Kennedy, 286 N.C. 130, 139, 209 S.E.2d 494, 500 (1974)); see Gully Brook Revocable Tr. v. Cook (In re Cook), Nos. 15-81220, 16-09015, 2017 Bankr. LEXIS 364, at *16 (Bankr. M.D.N.C. Feb. 9, 2017) ("In order for Defendant's representations to support a claim for fraud, they must be specific representations regarding an existing fact.").

Further, a claim alleging fraud must satisfy the requirements of the heightened standard of Rule 9(b). Packrite, 2019 U.S. Dist. LEXIS at *12-13. To meet this heightened standard, "the plaintiff must sufficiently describe 'the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'" Topshelf Mgmt. v. Campbell-Ewald Co., 117 F. Supp. 3d 722, 725 (M.D.N.C.

2015); <u>U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.</u>, 525 F.3d 370, 379 (4th Cir. 2008).

Plaintiff alleges that Recovco[22] made the following misrepresentations: (1) the loans were traditional mortgage loans, rather than part of a loan-to-own scheme;[23] (2) the loans were residential mortgage loans; (3) the loans were subject to Fannie Mae guidelines.  ECF No. 51, ¶ 238.[24]  The Amended Complaint does not allege any term of the loans that was inconsistent with "traditional mortgage loans," or how such a statement was false. Plaintiff's conclusory allegation that the loans were part of a loan-to-own scheme is neither a statement of fact which must be accepted as true, nor a statement regarding any term of the loans

---

[22] Plaintiff alleges that "[d]uring the loan origination process, [he] worked with Nick Dempsey, an agent of Recovco, and his immediate supervisor Dan Leanna."  ECF No. 51, ¶ 42.  With respect to each alleged misrepresentation, however, Plaintiff does not identify who at Recovco made the representation or the time and place of the representation.  This general prefatory statement is insufficient to satisfy the specificity requirements of Rule 9.  The Court nevertheless will address each alleged misrepresentation below.

[23] Plaintiff's filings make numerous references to a purported "loan-to-own scheme."  Plaintiff does not define the term, and the broader context within the filings does not assist the Court in understanding precisely what he means by the term.  The term "loan-to-own" has been used to describe certain transactions whereby a lender acquires "a company through the conversion of debt into equity or ownership of assets."  David A. Wender & Christopher K. Coleman, <u>Loan to Own Transactions</u>, Practice Note, LᴇxɪsNᴇxɪs (noting that, in the bankruptcy context, the term can refer to acquiring ownership of a non-individual debtor through debtor-in-possession financing or purchasing claims).

[24] Plaintiff alleges that Recovco "suppressed the truth of the implications of securitization of these loans."  <u>Id.</u> ¶ 239.  As discussed below, any such an alleged failure to disclose is insufficient to support a claim for relief for fraud in this case.  <u>See</u> <u>Packrite</u>, 2019 U.S. Dist. LEXIS at *9, <u>infra.</u>

that differed from those that were represented.[25]  Instead, it is an allegation of the motivation of Recovco in entering the loans, which has no bearing on the terms on the face of the loans. Although Plaintiff has myriad complaints about the servicing of the loans after he entered them, he does not deny that there was a payment default under the loans or allege any specific representation regarding their terms that was false and induced him to enter the loans.

Plaintiff also does not allege any definite and specific representation made by Recovco in an effort to induce him to enter the loans that it would forbear or modify the loans in the event of default rather than exercising its express rights under the loan documents.  Even if Recovco had made such a representation, it would have contradicted the specific terms of the loan documents[26] and, regardless, Plaintiff has not alleged who at

---

[25] Plaintiff alleges that he learned of the true motivations of Recovco by speaking with "the vice president of the lender who had brokered the ultimately successful Bald Head Island loan."  ECF No. 51, ¶ 152.  There is no allegation that this unrelated person who worked for an unrelated entity had any knowledge of any fact supporting his conclusory allegations against Recovco, nor does Plaintiff allege any such facts.  Regardless, such allegations do not affect the terms of the loans, nor does Plaintiff allege how any such conclusory statements, even if supported by facts and true, altered the terms of the loans or cured the admitted defaults under the security agreements, or how Recovco or any of the servicers acted beyond the rights conferred in their security agreements when the properties were foreclosed.

[26] In North Carolina, a party cannot rely upon a putative representation that is contradicted by the terms of the documents the party signed.  See Butler v. Winner Int'l Corp., 60 F.3d 821 (Table), 1995 WL 420004, at *6 (4th Cir. 1995) (citing Spartan Leasing Inc. v. Pollard, 101 N.C. App. 450, 400 S.E.2d 476, 478 (1991)).

Recovco made the representation, when it was made, or the specific content of any such representation. "[W]here a fraud claim stems from an alleged failure to fulfill an agreement, the complaint must contain specific factual matter to permit the plausible inference that the defendant did not intend to honor the agreement at the time it was made." Packrite, 2019 U.S. Dist. LEXIS at *9; Bon Aqua Int'l, Inc. v. Second Earth, Inc., No. 1:10CV169, 2013 U.S. Dist. LEXIS 11635, at *11 (M.D.N.C. Jan. 29, 2013) (citing Strum v. Exxon Co., U.S.A., 15 F.3d 327, 331 (4th Cir. 1994)). Plaintiff makes a conclusory statement that Recovco misrepresented its motivation to enter the loans in that it did so to take control of the mortgages;[27] however, there are insufficient factual allegations on the face of the Amended Complaint to support this conclusory statement. The mere exercise of a lender's rights after an undisputed default, even with poor customer service after the default, is insufficient to establish an inference of fraud at the inception of the loan.

Similarly, it is implausible for Plaintiff to allege that any representation that the loans were residential mortgage loans either was false or constituted a misrepresentation on which Plaintiff could rely. First, Plaintiff does not explain how such a generalized statement is sufficiently specific for purposes of

---

[27] Recovco assigned its interest in the mortgages as set forth above.

establishing fraud, or even how such a statement was false in this case.  To the extent Plaintiff contends that Recovco represented that the loans were not intended to be secured by rental properties, such an allegation is contrary to the documents and need not be accepted as true.  See Anderson v. Kimberly-Clark Corp., 570 Fed. Appx. 927, 931 (Fed. Cir. 2014) (quoting Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001), for the proposition that, "[a]lthough '[a]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party,' a 'court need not [ ] accept as true allegations that contradict matters properly subject to judicial notice or by exhibit.'"); see also GFF Corp. v. Associated Wholesale Grocers, Inc., 130 F.3d 1381, 1385 (10th Cir. 1997) ("[F]actual allegations that contradict . . . a properly considered document are not well-pleaded facts that the court must accept as true.").

Plaintiff alleges that he negotiated all terms of the loans and "handled all aspects of the loan origination process."  ECF No. 51, ¶ 49.  The loan documents specifically contemplate that the Properties will be rented — in fact they require it.  The NO Mortgage attaches an SFR Security Instrument Rider.  NO Claim, Part 2, at 32 (the "Security Rider").  The Security Rider provides that "[t]he Property and the ownership, leasing, management, maintenance and operation of the Property are in compliance . . .

with Applicable Law . . . ," and "Borrower at all times has and
shall continuously (i) engage in the business of ownership,
leasing, maintenance, management and operation of the Property,
[and] (ii) operate the Property as residential rental property .
. . ." Id. ¶ 1. (a) and (d). Similarly, although the BE and
Rodanthe Deeds of Trust each contained a provision requiring that
"Borrower" occupy the BE Property as her principal residence, BE
Claim, Part 2, p. 20, ¶ 6, Rodanthe Claim, Part 2, p. 19, ¶ 6, the
parties entered Family Riders that waived this requirement and
assigned all rents.  BE Claim p. 27, ¶¶ E and H, Rodanthe Claim,
p. 27, ¶¶ E and H.  The parties executed identical SFR Security
Instrument Riders as with the NO and Rodanthe Properties, BE Claim,
p. 34, Rodanthe Claim, p. 34, and further entered identical SFR
Vacant Property Riders, acknowledging that the BE and Rodanthe
Properties were vacant, but requiring that each be leased under
similar terms as the NO Property.  BE Claim, p. 31, ¶¶ 1 and 3,
Rodanthe Claim, p. 31, ¶¶ 1 and 3.[28]

Finally, Plaintiff alleges that Recovco implied that the
loans were subject to Fannie Mae guidelines.  Rather than alleging
that Recovco or any specific individual at Recovco made such a

---

[28] The Security Riders further required that the affected Properties be subject
to a lease with a minimum 12-month term at market rates.  Debtor purported to
rent the Properties to Flagship.  ECF Nos. 20 and 37, Schedule G.  The record
in this case demonstrated that the leases were for well under market rates.
The leases were entered by, through, and on behalf of Plaintiff.  To the extent
that the leases to Flagship breached a term of the Security Rider, it was not
a misrepresentation by Recovco.

statement, Plaintiff alleges that he inferred this representation because Recovco declined to extend the Bald Head loan due to certain attributes of the property running afoul of Fannie Mae underwriting guidelines and thereby implied that the other "three loans were compliant" with the same guidelines.  ECF No. 51, ¶ 45. Plaintiff has not alleged that such a representation was false. Nevertheless, even if a representation that the loans were covered by Fannie Mae guidelines were false, for which no facts have been alleged, under the circumstances alleged in this case, such an indirect implication based on a plaintiff's assumption is insufficiently definite and specific to support a claim for fraud. Therefore, Plaintiff did not present a plausible claim for fraudulent inducement under North Carolina law.

The claim is similarly deficient under Louisiana law.  In Louisiana, "[t]he defense of fraudulent inducement is a claim that a party misrepresented the truth either to obtain an unjust advantage or to cause a loss to the other contracting party[.]" Wootan & Saunders v. Diaz, 2017-0820 (La. App. 4 Cir. 03/28/18), 317 So. 3d 390, 400.  As in North Carolina, federal courts in Louisiana have applied Rule 9(b) heightened scrutiny to fraudulent inducement claims under Louisiana law.[29]  See Wright's Well Control

---

[29] Whether the heightened pleading requirements of Fed. R. Civ. P. 9(b) apply to state law claims sounding in fraud is a question of federal procedure; and the Court will analyze the question under the precedent of this district.  See, e.g., Selby v. Schroeder, 522 F. Supp. 3d 388, 399 n.6 (M.D. Tenn. 2021) (federal

Servs., LLC v. Oceaneering Int'l, Inc., No. 15-1720, 2015 U.S.
Dist. LEXIS 154559, at *40 (E.D. La. Nov. 16, 2015) (The court
dismissed the fraudulent indument claim because WWCS "failed to
allege fraud with particularity, as required by Rule 9(b)."). For
the purposes of this case, the elements for a fraudulent inducement
cause of action under Louisiana law are indistinguishable from the
elements for the cause of action under North Carolina law; thus,
the same analysis applies, and the Amended Complaint fails to state
a plausible claim for fraudulent inducement. Wootan & Saunders,
317 So. 3d at 400. Additionally, the fraudulent inducement claim
under Louisiana law is deficient under the heightened pleading
requirements under Rule 9(b) for the same reasons that the claim
under North Carolina law is deficient under Rule 9(b). Therefore,
the Motion for Default Judgment is denied with respect to the
fraudulent inducement claim as to the inception of the loans, and
the claim is dismissed.

> **4.    The Amended Complaint does not allege sufficient
> facts to support a negligent misrepresentation
> claim.**

The Amended Complaint does not allege sufficient facts to

---

district court seated in Tennessee applying Sixth Circuit precedent with respect
to the application of Rule 9(b) to a fraud claim under Pennsylvania state law).
However, "[w]hile the particularity requirement is governed by Federal Rule of
Civil Procedure 9(b), substantive State law governs the elements necessary to
meet the standard." Irwin, 2014 U.S. Dist. LEXIS at *8. "The specificity of
the allegations as required by state law affects the pleading requirements under
Rule 9(b)." Nakell v. Liner Yankelevitz Sunshine & Regenstreif, LLP, 394 F.
Supp. 2d 762, 772 (M.D.N.C. 2005). Therefore, it is helpful to look to the
federal courts in Louisiana for guidance on how to apply the particularity
requirement of Rule 9(b) to claims sounding in fraud under Louisiana state law.

plausibly state a claim for negligent misrepresentation under either North Carolina or Louisiana law. Under North Carolina law, negligent misrepresentation "occurs when a party justifiably relies to his detriment on information prepared without reasonable care by one who owed the relying party a duty of care." Raritan River Steel Co. v. Cherry, Bekaert & Holland, 322 N.C. 200, 206, 367 S.E.2d 609, 612 (1988). "North Carolina's federal district courts have consistently held that plaintiffs are required to plead claims for negligent misrepresentation with the particularity required by Rule 9(b)." Value Health Sols., Inc. v. Pharm. Rsch. Assocs., Inc., 2020 NCBC 41, 2020 WL 2616400, at *10 (citing, among other cases, Madison River Mgmt. Co. v. Bus. Mgmt. Software Corp., 351 F. Supp. 2d 436, 447 (M.D.N.C. 2005)).

As with the claims for fraud, Plaintiff's claim does not meet the heightened pleading standard of Rule 9(b). Plaintiff claims that "[d]uring the course of the discussions and negotiations between Recovco and Plaintiff, Recovco supplied information to Plaintiff that the loans were governed by regulations and/or trade practices intended to prevent unjustified[30] foreclosures." ECF No. 51, ¶ 226. Even assuming that Recovco owed Plaintiff a duty beyond the contractual obligations in the security instruments, there is

---

[30] Plaintiff does not dispute that each of the loans was in payment default prior to the applicable servicer commencing foreclosure and does not contend that any of the holders or servicers breached any term of the security instruments in foreclosing on the affected property. ECF No. 51, ¶¶ 66-67.

no specificity as to the information provided, who provided it, and when it was provided.  To the extent there were any negative implications that the loans were governed by Fannie Mae regulations, those implications, coupled with Plaintiff's corresponding inferences, were insufficiently definite and specific to plausibly support a claim for negligent misrepresentation under the circumstances of this case.  The Amended Complaint is devoid of allegations sufficiently describing the speaker, content, time, or place of any false representations allegedly provided to Plaintiff beyond those already discussed, which for the reasons stated above, are insufficient to support a claim sounding in misrepresentation or fraud.  Therefore, Plaintiff did not present a plausible cause of action for negligent misrepresentation under North Carolina law.

In Louisiana, "[n]egligent misrepresentation occurs when there is a legal duty to supply the correct information and a breach of that duty resulting in damages to the plaintiff." Rabalais v. Gray, 14-552 (La. App. 5 Cir. 12/16/14), 167 So. 3d 101, 107.  Under Louisiana law, "the tort of negligent misrepresentation is limited to cases in which a contractual or fiduciary relationship exists." Colonial Oaks Assisted Living Lafayette v. Hannie Dev., Inc., No. 6:18-CV-01606, 2019 U.S. Dist. LEXIS 110910, at *7 (W.D. La. June 14, 2019).  The elements to establish a negligent misrepresentation claim are:

47

(1) the defendant, in the course of its business or other matters in which it had pecuniary interest, supplied false information, (2) the defendant had a legal duty to supply correct information to the plaintiff, (3) the defendant breached its duty, which can be breached by omission as well as by affirmative misrepresentation, and (4) the plaintiff suffered damages or pecuniary loss as a result of [the] justifiable reliance upon the omission or affirmative misrepresentation.

Sys. Eng'g & Sec., Inc. v. Sci. & Eng'g Ass'ns, 2006-0974 (La. App. 4 Cir. 6/20/07), 962 So. 2d 1089, 1092.

These elements are substantially similar to the elements of negligent misrepresentation under North Carolina law for purposes of this case; and thus, the claim of negligent misrepresentation under Louisiana law is subject to the heightened pleading requirements of Rule 9(b).[31]  Due to the same lack of specificity for which the claim will be dismissed under North Carolina law, the claim for negligent misrepresentation against Recovco with respect to the inception of the loans, under Louisiana law, is dismissed; and the Motion for Default Judgment as to the claim is denied.

**B.  Claims Against Specialized**

Specialized asserts that this Court should dismiss claims four, five, six, seven, and nine for failure to state a claim upon which relief may be granted.

---

[31] See supra note 29.

1.   **The Amended Complaint does not include sufficient facts to support claim four, breach of the duty of good faith and fair dealing, against Specialized.**

Plaintiff claims that the "loan documents, including the loan contracts themselves and the security interests associated with the loan contracts, are all subject to the implied covenants of good faith and fair dealing," and Specialized breached the covenants of good faith and fair dealing with respect to the loan documents insofar as "Specialized knew or should have known that the loan modification process which they offered to Plaintiff was futile from its beginning."  ECF No. 51, ¶ 259-61.

In North Carolina, "[a]ll parties to a contract must act upon principles of good faith and fair dealing to accomplish the purpose of an agreement, and therefore each has a duty to adhere to the presuppositions of the contract for meeting this purpose." Recycling Equip., Inc. v. E Recycling Sys., LLC, No. 5:14-CV-00056, 2014 U.S. Dist. LEXIS 171175, at *13 (W.D.N.C. Dec. 9, 2014) (quoting Maglione v. Aegis Family Health Ctrs., 168 N.C. App. 49, 607 S.E.2d 286, 291 (2005)).  "The implied covenant of good faith and fair dealing is a part of every contract and is breached where one party to a contract does something that 'injures the right of the other to receive the benefits of the agreement.'" Recycling Equip., 2014 U.S. Dist. LEXIS at *13-14 (quoting Governors Club, Inc. v. Governors Club Ltd. P'ship, 152 N.C. App. 240, 251, 567 S.E.2d 781, 789 (2002), aff'd 357 N.C. 46,

577 S.E.2d 620 (2003) (citing <u>Bicycle Transit Auth., Inc. v. Bell</u>, 314 N.C. 219, 228, 333 S.E.2d 299, 305 (1985))).  As such, a claim for breach of the covenant of good faith and fair dealing cannot exist without an underlying breach of contract.  <u>See</u> <u>Abbington SPE, LLC v. U.S. Bank, Nat'l Ass'n</u>, 352 F. Supp. 3d 508, 519 (E.D.N.C. 2016).  "North Carolina recognizes 'a separate claim for breach of an implied covenant of good faith and fair dealing only in limited circumstances involving special relationships between parties, [such as] cases involving contract for funeral services and insurance.'"  <u>Id.</u> (quoting <u>Ada Liss Grp. (2003) v. Sara Lee Corp.</u>, No. 1:06CV610, 2009 WL 3241821, at *13 n.10 (M.D.N.C. Sept. 30, 2009).  "'Outside such circumstances, actions for breach of good faith fail.'"  <u>Abbington SPE</u>, 352 F. Supp. 3d at 519.

Plaintiff did not plausibly plead the elements of a violation of good faith and fair dealing.  For the reasons set forth above, Plaintiff has failed to allege sufficient facts to give rise to a special relationship with Specialized, and Plaintiff does not allege that Specialized breached the terms of the Mortgage or Deeds of Trust in any way.  Instead, Plaintiff alleges that, after the loans were entered and after he defaulted, Specialized subjected him "to a bizarre and Kafkaesque run-around, whereby they held out the carrot of a loan modification process, but continually denied him access to that process."  ECF No. 51, ¶ 260.  This is a conclusory statement, and Plaintiff fails to assert factual

allegations that Specialized breached any of the security documents to which he was a party[32] or injured his right to receive benefits of those agreements.  He does not allege that he was denied the loan; he does not allege that he was not in default; and he does not allege that any of the actions taken as a result of the default were unauthorized under the terms of the Notes, NO Mortgage, or North Carolina Deeds of Trust.  The covenant of good faith and fair dealing cannot add terms to the security agreements or prevent parties from exercising the express rights under the security agreements.  The mortgage and both deeds of trust permitted the loans to be securitized.  BF Claim, p. 23, ¶ 20; NO Claim, p. 21, ¶ 20, Rodanthe Claim, p. 22, ¶ 20.  For the reasons stated below, the Amended Complaint does not contain a plausible claim for breach of contract against Specialized for its failure to modify the loans instead of exercising its rights under the security instruments.  Therefore, Plaintiff has not presented a plausible claim for a breach of duty of good faith and fair dealing, and this claim for relief is dismissed under Rule 12(b)(6).

The claim for breach of the duty of good faith and fair dealing similarly fails under Louisiana law.  "Louisiana

---

[32] Plaintiff is not a party to any loan agreements or the Notes.  Plaintiff is only a party to the NO Mortgage and BE and Rodanthe Deeds of Trust.  The Court addresses Plaintiff's ninth claim against Specialized for breach of an alleged settlement agreement infra at Section V.B.5.

recognizes an implied covenant of good faith and fair dealing in every contract." Spillway Invs. LLC v. Pilot Travel Ctrs. LLC, No. 04-2451, 2005 U.S. Dist. LEXIS 3321, at *22 (E.D. La. Feb. 22, 2005); see La. Civ. Code art. 1983. "[T]o state a cause of action for breach of a duty of good faith and fair dealing, a plaintiff must allege that the defendant's actions were prompted by fraud, ill will or sinister motivation." Spillway Invs., 2005 U.S. Dist. LEXIS at *24; see Com. Nat'l Bank v. Audubon Meadow P'ship, 566 So.2d 1136 (La. Ct. App. 1990). Nevertheless, the implied covenant of good faith and fair dealing is not an "everflowing cornucopia of wished-for legal duties" nor does it "insert new terms that were not bargained for. A covenant is implied only when it is consistent with the express terms of the contract." Sanderson v. H.I.G. P-XI Holding, Inc., No. 99-3313 SECTION "G", 2000 U.S. Dist. LEXIS 10893, at *18 (E.D. La. July 27, 2000) (quotations omitted); see also Sartisky v. La. Endowment for the Humanities, No. 14-1125, 2015 U.S. Dist. LEXIS 161589, at *11 ("If the actions of a party are permitted under the express terms of the agreement, 'that party cannot as a matter of law be acting in breach of the implied covenant of good faith and fair dealing.'" (quoting Woman's Hosp. Found. v. Nat'l Pub. Fin. Guar. Corp., No. 11-cv-00014, 2012 WL 956622, at *4 (M.D. La. Mar. 20, 2012) (further citations omitted))). As with the claim under North Carolina law, Plaintiff has not alleged that Specialized took any action that was not

permitted under the terms of the mortgage.  Therefore, the Amended Complaint did not state a claim for breach of the duty of good faith and fair dealing.

> **2.    The Amended Complaint does not include sufficient facts to support a claim for constructive fraud against Specialized and Recovco with respect to the loan servicing.**

Plaintiff argues that Specialized "assumed a fiduciary duty to Plaintiff when it offered the possibility of loan modification to Plaintiff, asked Plaintiff to submit the loan modification applications, and initiated phone calls to Plaintiff seeking resolution of loan deficiencies and requesting additional loan modification documentation." ECF No. 51, ¶ 266.  Plaintiff further asserts that Recovco "joined with Specialized in this duty when, through its agent Dan Leanna, it reached out to Plaintiff, purportedly on behalf of Plaintiff [sic], and then told Plaintiff to get in touch with Specialized."  Id. ¶ 267.

As with the first claim for relief, the elements of constructive fraud are not met with regard to any actions purportedly taken by Specialized and Recovco in connection with the loan servicing.  Plaintiff's allegations do not plausibly support the imposition of a fiduciary or special relationship with Specialized or Recovco.  Communications with borrowers about the possibility of obtaining loan modifications that occur normally in the creditor/debtor relationship do not create a special

relationship between the parties. Plaintiff has not cited any authority imposing such a duty under these circumstances, and it is easy to see why courts would not impose such a relationship on lenders as a consequence every time a lender communicates with a borrower about the possibility of a loan modification. If such a duty were imposed, lenders would be ill-advised to consider discussing loan modifications with borrowers. Plaintiff did not allege sufficient facts that would take the relationship beyond that of creditor and debtor or that one party thoroughly dominated the other. Therefore, Plaintiff did not present a plausible claim for constructive fraud under North Carolina or Louisiana law.

> **3.    The Amended Complaint does not include sufficient factual information to present a plausible claim for negligent misrepresentation under claim six.**

Plaintiff alleges that "Specialized owed Plaintiff a duty of care to provide accurate information about loan modifications available" which might forestall the foreclosure processes. Id. ¶ 276-77.

As with claim three, Plaintiff did not meet the heightened standard of Rule 9(b). Plaintiff alleges a single communication in which a representation was made to him by an unidentified person at Specialized. Plaintiff alleges that, before missing any payment on "the loan in question,"[33] he contacted Specialized on November

---

[33] Plaintiff does not identify about which loan this statement was made.

9, 2018 "seeking to make arrangements with Specialized along the lines of those successfully negotiated with BSI as to the Bald Head Property." Id. ¶ 67. Plaintiff alleges that, in that communication, "Specialized's representative" instructed him to submit a Request for Mortgage Assistance ("RMA"), and that "the result of the process would be that the loan would be 'forbearance, restructuring, or deferment.'" Id. ¶ 68. Even assuming such a communication occurred, it is insufficient in myriad ways to support a claim for negligent misrepresentation.

First, the allegation is insufficiently specific under Rule 9. Plaintiff does not identify the speaker and does not identify the loan about which the putative statement was made. Second, Plaintiff has not alleged any facts or cited any case which would support that Specialized owed a duty of care to him beyond any duties specifically imposed under the loan documents. Cf. Dallaire, 367 N.C. at 368, 760 S.E.2d at 267 (observing that "borrowers and lenders are generally bound only by the terms of their contract and the Uniform Commercial Code," and rejecting the claim of negligent misrepresentation because, even if there were a duty beyond contractual terms, the plaintiffs did not reasonably rely on the putative representation). As in Dallaire, it would be unreasonable for Plaintiff to rely on such a generalized statement of an unidentified representative of Specialized. Although the facts in this case do not demonstrate that Plaintiff could have

discovered whether the loan in fact would be forborne, restructured, or deferred, it would have been unreasonable for Plaintiff to have relied on any indefinite representation that Specialized would modify its rights under the loan documents without having even received or reviewed an RMA. For these reasons, Plaintiff did not present a plausible cause of action for negligent misrepresentation against Specialized.

For these same reasons, Plaintiff did not present a plausible negligent misrepresentation against Specialized under Louisiana law because Plaintiff has not pled facts that satisfy the heightened scrutiny of Rule 9(b). Therefore, Specialized's Motion to Dismiss as to the sixth claim for relief is granted.[34]

### 4. The Amended Complaint does not include sufficient facts to support an abuse of process claim for claim seven.

"Abuse of process is the misapplication of civil or criminal process to accomplish some purpose not warranted or commanded by the process." Pinewood Homes, Inc. v. Harris, 184 N.C. App. 597, 602, 646 S.E.2d 826, 831 (2007); David A. Logan & Wayne A. Logan, North Carolina Torts § 19.40 at 432 (1996) (quotations omitted). The two elements for an abuse of process claim are "(1) the existence of an ulterior motive, and (2) an act

---

[34] Specialized argues that claims four, five, and six are barred by North Carolina's Statute of Frauds and Louisiana's Credit Agreement Statement. Having determined that those claims will be dismissed for failure to state a claim for relief, the Court does not need to consider the statute of frauds defense.

in the use of the process not proper in the regular prosecution of the proceeding." <u>Angell v. Shawmut Bank Conn. Nat'l Ass'n</u>, 153 F.R.D. 585, 589-90 (M.D.N.C. 1994); <u>Ellis v. Wellons</u>, 224 N.C. 269, 29 S.E.2d 884 (1944) (quotations omitted).

> The ulterior motive requirement is satisfied when the plaintiff alleges that the prior action was initiated by the defendant or used by him to achieve a collateral purpose not within the intended scope of the process used. The act requirement is satisfied when the plaintiff alleges that during the course of the prior proceeding, the defendant committed some willful act whereby he sought to use the proceeding as a vehicle to gain advantage of the plaintiff in respect to some collateral matter.

<u>Pinewood Homes</u>, 184 N.C. App. at 603 (quoting <u>Hewes v. Wolfe</u>, 74 N.C. App. 610, 614, 330 S.E.2d 16, 19 (1985)).

The United States District Court for the Eastern District of North Carolina has rejected similar "threadbare" claims of abuse of process in the foreclosure context. In <u>Gardner v. Bank of N.Y. Mellon</u>, No. 5:13-CV-00471-FL, 2014 WL 12623069, at *5 (E.D.N.C. Feb. 24, 2014), the plaintiff alleged that the lender "misrepresented its authority to act" in the foreclosure proceeding to "unjustly enrich itself." The court dismissed the claim under Rule 12(b)(6), finding that these facts were insufficient to establish an ulterior motive, and that the complaint did not explain how the lender's alleged misrepresentation of its authority, culminating in a wrongful appointment of the substitute trustee, either served its motive, or gained some value greater than that to which the lender was

entitled when the "plaintiffs admittedly were in default" at the time.  Id.

In this case, Plaintiff alleges that the loan servicers, including Specialized and Fay, caused the foreclosure proceedings to be filed "for the ulterior purpose of cheating Plaintiff . . . of the equity in the Properties," "obtaining the Properties at substantially below-market prices, and taxing the exorbitant costs of the process onto Plaintiff."  ECF No. 51, ¶¶ 292-94.  Even assuming Plaintiff's allegation of unjust enrichment sufficiently establishes the first element, ulterior motive, the Amended Complaint has not alleged that any action was taken during the prior foreclosure actions in North Carolina beyond the valid exercise of rights under the Deeds of Trust.  Plaintiff does not dispute the default and does not assert any wrongful actions taken in the North Carolina foreclosure actions.  Plaintiff makes the general and conclusory allegation that Specialized "undervalued all Three Properties in their foreclosure actions . . . [to] enable[] 'Investors' to purchase the properties far below market value and avoid payment of inferior liens . . . ."  Id. ¶¶ 128-29.[35]  This allegation again goes to motive; but, as in Gardner,

---

[35] Plaintiff alleges that "Defendants" (unspecified) alleged in the foreclosure proceedings that, under "N.C. Gen. Stat. § 45-21.16c.5b) [sic]," they had complied with information requests from the buyer under N.C. Gen. Stat. § 45-93.  N.C. Gen. Stat. § 45-93 applies, however, only to property to be used by the individual borrower as a dwelling, not property that tenants or others use.  Weber v. Specialized Loan Servicing, LLC, 627 F. Supp. 3d 538, 547-48 (E.D.N.C.

Plaintiff does not sufficiently explain how such actions served the alleged ulterior motive, and, even more problematically, how any of the alleged actions allowed Specialized to gain a wrongful advantage over Plaintiff outside of obtaining the relief in the foreclosure – relief to which Specialized was entitled due to Plaintiff's undisputed default. Therefore, the Amended Complaint fails to state a claim for abuse of process in North Carolina.

In Louisiana, "[a]buse of process involves the misuse of a process already legally issued whereby a party attempts to obtain a result not proper under the law." Palmer v. Ameriquest Mortg. Co., No. 41576, 945 So. 2d 294, 300 (La. App. 2006); see Waguespack, Seago & Charmichael v. Lincoln, No. 99-2016, 768 So. 2d 287, 291 (La. App. 2000). "The two essential elements of an abuse of process are an ulterior purpose and a willful act in the use of process not proper in regular conduct of the proceeding." Palmer, 945 So. 2d at 300. As explained by the Court of Appeal of Louisiana:

> "An ulterior motive or a bad intention in using the process is not alone sufficient, the bad intent must have culminated in the abuse, for it is the latter which is the gist of the action. An action for abuse of process cannot be maintained where the process was employed to perform no other function than that intended by law. Thus the mere issuance of process is not actionable as

2022). All of the properties at issue in this case were investment properties used for rental purposes and Plaintiff has never occupied any of the Properties. ECF No. 51, ¶ 131 (alleging, "[a]t no time throughout the history of the loans has either Rabbi Miller or Ms. Howard occupied any of The Properties."). Therefore, the referenced statute did not require defendants to respond to any such requests, and such a statement by the servicer would not have been false.

> an abuse of process; there must be use of the process,
> and that use must of itself be without the scope of the
> process, and hence improper. . . .

Mini-Togs, Inc. v. Young, 354 So. 2d 1389, 1390 (La. App. 1978)

(quoting 1 Am.Jur.2d Abuse of Process § 12).

Plaintiff supports his claims of abuse of process in Louisiana with the following allegations: (a) "Defendants" submitted a value of $275,000.00 for the NO Property despite knowledge of a sale contract on the property for $815,000.00, ECF No. 51, ¶ 128; (b) Specialized and (non-party) HOF I Legal Title Trust 3 used the false inspection reports[36] to have the Louisiana state court appoint a curator, stating that Plaintiff's "current whereabouts are unknown," id. ¶ 142; and (c) counsel for Specialized knew Plaintiff's domiciliary residence, id. ¶ 136. As in Gardner, Plaintiff does not allege how any of these actions permitted Specialized to obtain more relief than that to which it was entitled. Plaintiff concedes that the loan was in default under the NO Mortgage. Plaintiff does not allege what effect, if any, the appointment of a curator had or was intended to have but leaves that for speculation by the Court. These allegations are insufficient to state a plausible claim under Louisiana law, and therefore, Plaintiff failed to plead a plausible claim regarding

---

[36] Plaintiff states that Specialized's parent, Computershare, acting on behalf of Specialized, issued erroneous inspection reports that Plaintiff had occupied and abandoned the NO Property.  Id. ¶ 130.

the New Orleans Property.  Specialized's Motion to Dismiss as to claim seven will be granted.

> **5.    The Amended Complaint does not include sufficient facts to support a breach of settlement agreement claim against Specialized.[37]**

In the ninth claim for relief, Plaintiff asserts that Specialized and Fay[38] breached a settlement agreement.  Plaintiff alleges that he and the servicers (through counsel for Fay)[39] entered a settlement agreement providing that the servicers would "stand down on all foreclosure efforts to give Plaintiff time to

---

[37] At the time of the agreement, the Fall of 2021, Specialized was only servicing the New Orleans Property, thus, only Louisiana law governs.  ECF No. 90, at 32.

[38] The Amended Complaint asserts the ninth claim for relief against Selene and SN under the same putative settlement agreement, but Plaintiff voluntarily dismissed those claims.  ECF No. 102.

[39] Plaintiff alleges that he entered this contract in "the fall of 2021" with "the Defendants who were servicing the loans at the time" through North Carolina counsel Hutchens.  ECF No. 51, ¶ 193.  According to Plaintiff's allegations, at the time, Fay serviced both North Carolina properties, and Specialized serviced the NO Property.  Id. ¶ 163 (Howard's bankruptcy case was filed September 14, 2020) and ¶ 169 (at the time of Howard's bankruptcy, servicing of the North Carolina Properties had been transferred to Fay).  Plaintiff does not allege that Hutchens represented Specialized and does not allege that the same entity was the holder of any of the three loans at the time, nor does he identify any holder of the loans at that time.  Plaintiff's allegations regarding whom Hutchens represented and which servicer was servicing the loans are irreconcilably inconsistent.  As stated above, Plaintiff alleges that Fay was servicing the North Carolina loans at the time.  In paragraph 193 of the Amended Complaint, Plaintiff inconsistently alleges that Hutchens "upon information and belief" was representing Selene and Specialized.  Id. ¶ 193.  Although the Court is free to disregard either allegation of authority in light of these inconsistencies, it has assumed the accuracy of the more factually specific over the conclusory information and belief.  See Nationwide Mut. Ins. Co. v. Morning Sun Bus Co., No. 10-CV-1777 ADS AKT, 2011 WL 381612, *6 (E.D.N.Y. Feb. 2, 2011) (quoting Fisk v. Letterman, 401 F.Supp.2d 362, 368 (S.D.N.Y. 2005), for the proposition that, "[w]here plaintiff's own pleadings are internally inconsistent, a court is neither obligated to reconcile nor accept the contradictory allegations in the pleadings as true in deciding a motion to dismiss").  Regardless of authority, the allegations are insufficient to establish the existence of a settlement agreement for the reasons stated herein.

market and sell the Banner Elk Property so that the sale proceeds
could be used to resolve[40] the loan defaults." Id. ¶ 309.
Plaintiff alleges that counsel for Fay would "suspend" the
foreclosure against the Rodanthe Property, and not file a
foreclosure against the BE Property. Id. ¶ 194. Counsel for Fay
further agreed that "he would seek [counsel for Specialized's]
assistance in the same as to the [NO Property]." Id. In return,
Plaintiff would dismiss his pending lawsuits in Louisiana and Dare
County, North Carolina, and attempt to market and sell the Banner
Elk Property, so that the proceeds hopefully would be able to
satisfy that loan and either reinstate the Rodanthe and NO Notes
or attempt to reach a "negotiated settlement." Id. ¶¶ 194-98.
Plaintiff alleges that he complied by dismissing the lawsuits and
marketing the BE Property, id. ¶ 311, and that "[a]ll parties
initially followed the agreement, with [counsel for Specialized]
suspending foreclosure actions, and the New Orleans sale . . .
being stopped." Id. ¶ 197. Soon thereafter, he obtained a
contract to sell the BE Property, but Defendants then immediately
recommenced the foreclosure processes on the NO and Rodanthe
Properties and commenced a foreclosure on the BE Property. Id. ¶

---

[40] The Amended Complaint indicates that the resolution Plaintiff had in mind was
a negotiated settlement. Id. ¶ 198 (the anticipated proceeds would be
sufficient "to either fully pay off [the BE Note] and full reinstatement balance
on [the Rodanthe and NO Properties'] loans, or resolve all three matters for a
negotiated settlement" (emphasis added)).

313.  Plaintiff alleges that the purported settlement agreement constituted an enforceable contract, and that the recommencement of the foreclosure process breached that settlement.

### a)   There was no contract with Specialized.

"A settlement agreement is a contract and, as such, is subject to the rules governing interpretation of contracts." Vizinat v. Transcon. Gas Pipeline Corp., 552 So. 2d 1237, 1239 (La. Ct. App. 1989); see also Scott v. Livingston, 628 F. App'x 900, 902 (5th Cir. 2015).  A breach of contract requires a valid contract and "occurs when a party fails to perform an obligation under the terms of a contract which results in damages to the other party." St. Landry Homestead Fed. Sav. Bank v. Vidrine, No. 12-1406, 118 So. 3d 470, 489 (La. App. 2013).

Plaintiff has not alleged any facts to show that Hutchens was authorized as an agent of Specialized to enter contracts on its behalf.  Plaintiff alleges that Hutchens only represented Fay in the North Carolina actions and agreed only to "seek Adcock's [Specialized's counsel] assistance."  ECF No. 51, ¶ 194.  The Amended Complaint is devoid of any allegations that Specialized took any action to imbue Hutchens with actual or apparent authority to act on its behalf.  Under either North Carolina or Louisiana law, for a principal to imbue an agent with apparent authority, the principal must manifest to the third party that the agent has the authority to act on the principal's behalf.  See Boulos v.

Morrison, 503 So. 2d 1, 3 (La. 1987); see also Knight Publ'g Co.,
Inc. v. Chase Manhattan Bank, N.A., 125 N.C. App. 1, 15, 479 S.E.2d
478, 487 (1997) (holding that "apparent authority may not be relied
upon to assert that a principal authorized a certain transaction
between its purported agent and a third party unless the third
party *actually relied* upon the assertions of the principal
regarding the purported agent's power at the time of the
transaction") (citing 3 Am.Jr.2d *Agency* § 80 (1986)), Hayman vs.
Ramada Inn, Inc., 86 N.C. App. 274, 278-79, 357 S.E.2d 394, 397-
98 (1987)).  The person asserting authority cannot rely on the
assertions of the putative agent.  Boulos, 503 So. 2d at 3.
Regardless, Plaintiff has not alleged any actions by Specialized
that imbued Hutchens with authority to act on its behalf.

Even if Hutchens had entered the putative arrangement with
authority on behalf of Specialized, the facts alleged by Plaintiff
are insufficient to establish a binding contract.  An oral
agreement to forbear from exercising remedies under a credit
agreement is unenforceable under Louisiana law.  Whitney Nat'l
Bank v. Rockwell, No. 94-3049, 661 So. 2d 1325, 1332-33 (La. 1995)
(holding based on the Louisiana Credit Agreement Act, La.R.S.
6:1121 through La.R.S. 6:1124, that an agreement by a bank to
forbear and require interest only payments over a period of years
was an agreement to forbear payment and could not be enforced

unless in writing).  Therefore, any putative settlement agreement respecting the NO Mortgage is unenforceable.

Even if authorized and in writing, the putative settlement agreement was not an enforceable contract under North Carolina or Louisiana law.  "Under Louisiana law, in order to confect a valid contract, four elements are required: (1) the capacity to contract; (2) mutual consent; (3) a certain object; and (4) a lawful cause."  Succession of Schimek, No. 2019-1069, 302 So. 3d 78, 89 (La. App. 2020).  Plaintiff contends that the parties reached a settlement to give Plaintiff an opportunity to sell the BE Property so that he could reinstate the loans "or resolve all three matters for a negotiated settlement."  ECF No. 51, ¶ 198.  The putative "settlement agreement" lacked any specificity and did not settle anything, but merely was an agreement to agree.  It did not contain terms for a full resolution even if the BE Property were sold or provide a definite period during which foreclosure proceedings would be suspended.  Therefore, any putative settlement was too indefinite to support the formation of a contract.  See Shaw v. Restoration Hardware, Inc., No. CV 21-1540, 2022 WL 343458, at *2-3 (E.D. La. Feb. 4, 2022) (citing McNeely v. Town of Vidalia, 157 La. 338, 102 So. 422 (1924), for the proposition that "an agreement to agree is no agreement at all, since either party may avoid it by mere failure to agree").  At the hearing on the motions to dismiss, counsel for Plaintiff conceded that the purported

agreement did not specify a forbearance period, and that the parties were free to terminate the forbearance period by giving notice of the termination.   As alleged by the Plaintiff, the servicers did just that, recommencing the foreclosure proceedings and initiating the foreclosure against the BE Property.   ECF No. 51, ¶ 313.   Plaintiff does not allege that the notices of the foreclosures were deficient or somehow violated the terms of the security documents.

The putative settlement agreement is equally unenforceable under North Carolina law.   As in Louisiana, in North Carolina "[a] settlement agreement is a contract governed by the rules of contract interpretation and enforcement."   Williams v. Habul, 219 N.C. App. 281, 289, 724 S.E.2d 104, 110 (2012).   A claim for breach of a contract requires "(1) existence of a valid contract and (2) breach of the terms of that contract."   Howe v. Links Club Condo. Ass'n, 263 N.C. App. 130, 138, 823 S.E.2d 439, 448 (2018) (citing Poor v. Hill, 138 N.C. App. 19, 26, 530 S.E.2d 838, 843 (2000) (citation omitted)).

Under North Carolina law, "a valid contract requires assent, mutuality, and definite terms."   New Dunn Hotel, LLC v. K2M Design, Inc., No. 5:20-CV-107-FL, 2021 U.S. Dist. LEXIS 90288, at *14 (E.D.N.C. May 12, 2021).   "To constitute a valid contract, the terms of the contract require sufficient certainty and specificity with regard to material terms."   Jackson v. Jackson,

169 N.C. App. 46, 48–49, 610 S.E.2d 731, 733–34 (2005), rev'd on
other grounds, 360 N.C. 56, 620 S.E.2d 862 (2005). "A contract,
and by implication[,] a provision, leaving material portions open
for future agreement is nugatory and void for indefiniteness. . .
. Consequently, any contract provision . . . failing to specify
either directly or by implication a material term is invalid as a
matter of law." Id. at 48 (citing Rosen v. Rosen, 105 N.C. App.
326, 328, 413 S.E.2d 6, 7 (1992)). Further, "[t]he challenge to
vagueness in [a] contract goes to its sufficiency as giving rise
to a cause of action. Breach of an invalid contract, if that
paradox could exist, gives rise to no cause of action." Jackson,
169 N.C. App. at 49 (citations omitted). "[I]f the uncertainty as
to the meaning of a contract is so great as to prevent the giving
of any legal remedy, direct or indirect, there is no contract." Id.
(citations omitted).

In this case, the alleged settlement agreement was
impermissibly vague and lacked many essential terms. Plaintiff
alleges that the temporary reprieve was intended to provide the
parties a chance to agree on a resolution. ECF No. 51. The
putative agreement did not specify any period during which the
purported forbearance would be in effect and any foreclosure would
be forestalled. See Lambs Lane Realty, LLC v. Lakeland Bank, No.
A-0674-18T4, 2019 WL 1500903, at *6 (N.J. Super. Ct. App. Div.
Apr. 4, 2019) (affirming trial court's dismissal of putative breach

of contract because there was "no agreement on the essential terms of the forbearance agreement . . . including the length of the forbearance period"); <u>cf.</u> <u>Hele Ku KB, LLC v. BAC Home Loan Servicing, LP</u>, 873 F. Supp. 2d 1268, 1284 (D. Haw. 2012) (determining that even the admission in writing by the bank of the existence of a forbearance agreement was insufficient to overcome the statute of frauds where the admission did not contain the essential terms of the agreement to forbear).   Therefore, Specialized's Motion to Dismiss as to claim nine is granted.

### C.   Claims against HOF I Grantor Trust 5

As stated above,[41] HOF I Grantor Trust 5 is not a party to this adversary proceeding; and Plaintiff has not moved to amend the complaint to add HOF I Grantor Trust 5, despite the identification of HOF I Grantor Trust 5 as the transferor of Claim 7-1 no later than July of 2022 and despite HOF I Grantor Trust 5's filing a motion to dismiss under Rule 12(b)(4) in October of 2022 based on the omission.   For this reason, the Court will grant the motion to dismiss HOF I Grantor Trust 5 without prejudice under Fed. R. Civ. P. 4(m) and 12(b)(4).   <u>See</u> <u>Adams v. Allied Signal Gen. Aviation Avionics</u>, 74 F.3d 882 (8th Cir. 1996) (dismissing claim without prejudice against the unnamed putative affiliate of mis-named defendant under Fed. R. Civ. P. 4(m) even though such

---

[41] <u>Supra</u> note 8.

dismissal would have the effect of a dismissal with prejudice due to the passage of the applicable statute of limitation, and finding it "inexplicable" that plaintiff did not attempt to correctly name the defendant despite the clear record in the case of the proper entity).

Furthermore, there is no indication in the record that HOF, a party which Plaintiff purported to name as a defendant in this adversary proceeding, is an entity in existence which received service of process under Fed. R. Civ. P. 4(m), and the Court will dismiss all claims against HOF without prejudice under Fed. R. Civ. P. 12(b)(4).

### D. Claims Against Fay[42]

Fay asserts that claims nine and twelve should be dismissed because they fail to state a claim for relief.

1. **The Amended Complaint does not include sufficient facts to support Plaintiff's ninth claim for relief against Fay for breach of a putative settlement agreement.**

   a) **There was no contract with Fay.**

Assuming that Hutchens was authorized to enter a settlement agreement on behalf of Fay, the facts alleged by Plaintiff are insufficient to establish a binding contract for the reasons set forth above with respect to Specialized.  As with the claim for

---

[42] Fay only serviced the Rodanthe Property and Banner Elk Property.  Fay never serviced the New Orleans Property.  Therefore, only North Carolina law is applicable to claims against Fay.

breach of a putative settlement agreement against Specialized, the terms were too indefinite to support formation of a settlement agreement.  Therefore, Fay's Motion to Dismiss as to claim nine is granted.

### 2.   The Amended Complaint does not include sufficient facts to support claim twelve, breach of contract.

Plaintiff claims that Fay breached the Deed of Trust by "failing to maintain a grandfathered flood insurance policy that was in place on the Rodanthe property and which significantly added to the value of that property to potential buyers."  ECF No. 100, at 16; see also ECF No. 51, ¶¶ 340-44.  Fay argues that the Deed of Trust gave "the lender discretion over what insurance it will require the borrower to obtain to protect the secured property." ECF No. 67-1, at 18.

As already stated, "[t]he elements of a claim for breach of contract are (1) existence of a valid contract and (2) breach of the terms of that contract."  Simontacchi v. Invensys, Inc., No. 3:05cv283, 2008 U.S. Dist. LEXIS 5413, at *48 (W.D.N.C. Jan. 11, 2008) (quoting Poor, 138 N.C. App. at 26, 530 S.E.2d at 843).  In this case, it is clear that the Deed of Trust is a valid contract. The issue is whether there was a breach of the terms of the Deed of Trust.

Plaintiff conceded that the copies of the Deeds of Trust are accurate.  The Rodanthe Deed of Trust provides that "[i]f Borrower

fails to maintain any of the coverage . . . Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage." Rodanthe Claim, Part 2, ¶ 5. Thus, under the Deed of Trust, Fay had no obligation to maintain the "grandfathered" flood insurance policy. Furthermore, at the hearing, Plaintiff's counsel conceded that there are no terms in the Deeds of Trust that require Fay to maintain insurance on the properties at issue. Therefore, Fay did not breach any term of the only agreement to which Plaintiff was a party, and Fay's Motion to Dismiss as to claim twelve is granted.

**E. Claims Against All Defendants**

Specialized and Fay assert that claims eight, ten, and eleven should be dismissed for failure to state a claim for relief.

**1. The Amended Complaint does not include sufficient facts to support claim eight, a civil conspiracy against all Defendants.**

Plaintiff claims that all "Defendants" "conspired together and agreed to design, implement, and participate" in a loan-to-own scheme. ECF No. 51, ¶ 301. Recovco initiated the loans, Specialized "serviced the loans and handled the fraudulent modification process," and Fay continued "the scheme by acting to prevent and thwart all efforts to resolve the outstanding debts." Id. ¶ 303. Further, Plaintiff alleges that Defendants "have abused and orchestrated foreclosure processes . . . seeking to seize the

full equity [Plaintiff's] properties under foreclosure sales grossly exceeding the value of the liens" and "have repeatedly refused to accurately account for and explain various amounts claimed due for full payment of, and for reinstatement of, the loan." Id. ¶¶ 322-23.

"Under North Carolina law, an action for civil conspiracy requires (1) an agreement between two or more persons, (2) to do an unlawful act or to do a lawful act in an unlawful way, and (3) resulting in injury to the plaintiff pursuant to the common scheme." Ne. Solite Corp. v. Unicon Concrete LLC, No. 1:98CV00872, 1999 U.S. Dist. LEXIS 9762, at *7-8 (M.D.N.C. Apr. 19, 1999). A civil conspiracy claim "must rest on underlying tortious conduct." Design Res., Inc. v. Leather Indus. Of Am., No. 1:10CV157, 2014 U.S. Dist. LEXIS 114950, at *47 (M.D.N.C. Aug. 19, 2014); see Dove v. Harvey, 168 N.C. App. 687, 690, 608 S.E.2d 798, 800 (2005) ("We first note, however, that there is not a separate civil action for civil conspiracy in North Carolina.").

Plaintiff states that "[d]efendants entered this agreement with knowledge that their actions were fraudulent." ECF No. 51, ¶ 302. "A threshold requirement in any cause of action for damages caused by acts committed pursuant to a conspiracy must be the showing that a conspiracy in fact existed." Henderson v. LeBauer, 101 N.C. App. 255, 261, 399 S.E.2d 142, 145 (1991). "The existence

of a conspiracy requires proof of an agreement between two or more persons . . . [and] evidence of the agreement must be sufficient to create more than a suspicion or conjecture in order to justify submission to a jury." Id.; see Fox v. City of Greensboro, 279 N.C. App. 301, 321-22, 866 S.E.2d 270, 288 (2021). In Fox, the Court of Appeals of North Carolina found that "[p]laintiffs failed to allege any specific factual allegations about the purported conspiracy" and the "complaint [was] devoid of any factual allegations regarding a meeting or agreement between all Defendants." Id. The plaintiffs pleaded that the defendants "'reached an agreement' and 'agreed to gather information,'" but the court stated that "such claims constitute mere conclusions regarding an alleged agreement." Id. Similarly in this case, Plaintiff does not aver any specific facts as to an alleged agreement among Defendants. Plaintiff's allegations are mere conclusions and are not sufficient to create more than a suspicion.

Regardless, because all of Plaintiff's tort claims will be dismissed, as discussed above, Plaintiff's civil conspiracy claim does not rest on any underlying tortious conduct.[43] Thus, the civil conspiracy claim cannot stand alone and must be dismissed. Design Res., 2014 U.S. Dist. LEXIS at *47. Therefore, Plaintiff

---

[43] In Robichaud v. Engage2Excel, Inc., the Western District of North Carolina similarly granted a defendant's motion to dismiss the civil conspiracy claim because the plaintiff failed to allege an underlying tort. No. 5:18-CV-00086-GCM, 2019 U.S. Dist. LEXIS 79053, at *12 (W.D.N.C. May 9, 2019).

did not present a plausible civil conspiracy claim regarding the North Carolina Properties.

The claim for conspiracy similarly fails under Louisiana law. For a conspiracy claim, "a plaintiff must allege and prove that an agreement existed to commit an illegal or tortious act, which act was actually committed, which resulted in the plaintiff's injury, and there was an agreement as to the intended outcome or result." Crutcher-Tufts Res., Inc. v. Tufts, 2007-1556 (La. App. 4 Cir. 9/17/08); 992 So. 2d 1091, 1094. As with the claim under North Carolina law, Plaintiff has not alleged any facts of an agreement or meeting. Also, under Louisiana law, "conspiracy is not a stand-alone claim." River Pars. Dirt & Gravel, LLC v. Willow Bend Ventures, LLC (In re Willow Bend Ventures, LLC), No. 18-6910, 2019 U.S. Dist. LEXIS 88801, at *7 (E.D. La. May 28, 2019); see Prime Ins. Co. v. Imperial Fire & Cas. Ins. Co., 2014-0323 (La. App. 4 Cir. 10/1/14); 151 So. 3d 670, 676 ("The Louisiana Supreme Court has held that conspiracy by itself is not an actionable claim under Louisiana law."). Therefore, Plaintiff did not present a plausible civil conspiracy claim regarding the New Orleans Property because Plaintiff's allegations are insufficient, and because the torts claims will be dismissed. The Motions to Dismiss of Specialized and Fay are granted as to claim eight;[44] the Motion for Default

---

[44] Specialized argues that claim eight is barred by North Carolina's Statute of Frauds and Louisiana's Credit Agreement Statement. Fay argues that claim eight

Judgment is denied with respect to claim eight as to Recovco; and claim eight is dismissed as to Recovco.

> ### 2. The Amended Complaint does not include sufficient facts to state a plausible claim for unfair and deceptive trade practices.

"[T]o state a claim under the UDTPA a party must establish that (1) the defendant engaged in an 'unfair' or 'deceptive' act or practice; (2) the act was in or affecting commerce; and (3) the act injured the plaintiff." Rutledge v. High Point Reg'l Health Sys., 558 F. Supp. 2d 611, 619 (M.D.N.C. 2008); see N.C. Gen. Stat. § 75.1-1; Dalton v. Camp, 353 N.C. 647, 656, 548 S.E.2d 704, 711 (2001). "Occurrence of the alleged conduct, damages, and proximate cause are fact questions for the jury, but whether the conduct was unfair or deceptive is a legal issue for the court." Belk, Inc. v. Meyer Corp., 679 F.3d 146, 164 (4th Cir. 2012) (quoting Gilbane Bldg. Co. v. Fed. Reserve Bank of Richmond, 80 F.3d 895, 902 (4th Cir. 1996)). "Acts are unfair if they offend public policy or are immoral, unethical, or substantially injurious to consumers and are deceptive if they have the capacity to deceive." Rutledge, 558 F. Supp. 2d at 619; see also Colonial Trading, LLC v. Bassett Furniture Indus., Inc., 530 F. App'x 218, 226 (4th Cir. 2013). "North Carolina courts have repeatedly held that a mere breach of contract, even if intentional, is not sufficiently unfair or

---

is an impermissible shotgun pleading. Since the Court will dismiss claim eight for failure to state a claim, the Court does not need to examine the other defenses raised by Specialized and Fay.

deceptive to sustain an action under [the UDTPA.]" PCS Phosphate
Co. v. Norfolk S. Corp., 559 F.3d 212, 224 (4th Cir. 2009) (quoting
Broussard v. Meineke Discount Muffler Shops, Inc., 155 F.3d 331,
347 (4th Cir. 1998) (internal quotations omitted)).  In order to
prevail on a UDTPA claim predicated on a breach of contract, the
plaintiff must show "substantial aggravating circumstances
attending the breach."  Id. (quoting Branch Banking & Trust Co.,
107 N.C. App. at 62, 418 S.E.2d at 700) (internal quotations
omitted)); see S. Atl. P'ship of Tenn., LP V. Riese, 284 F.3d 518,
535 (4th Cir. 2002) (describing the "egregious or aggravating
circumstances" requirement as a limit on the UDTPA's application).

Here, Plaintiff does not allege sufficient facts that any of
the defendants breached any contract or engaged in unfair or
deceptive practices.  Plaintiff alleges that Defendants breached
the Deeds of Trust by orchestrating the foreclosure processes and
deceived Plaintiff in continuing the loan-to-own scheme of the
loans.  Plaintiff fails to allege any breach, much less any
substantial aggravating circumstances attending any breach of the
Deeds of Trust or the Mortgage.  "Generally, substantial
aggravating circumstances involve 'forged documents, lies, and
fraudulent inducements.'"  Lohrenz v. Bragg Cmtys., LLC, No. 5:22-
CV-00044-M, 2023 U.S. Dist. LEXIS 70083, at *24-25 (E.D.N.C. Mar.
31, 2023) (quoting Stack v. Abbott Lab'ys, Inc., 979 F. Supp. 2d
658, 668 (M.D.N.C. 2013) (collecting cases)).  Nevertheless, mere

coercive statements do not constitute substantial aggravating circumstances. PCS Phosphate Co., 559 F.3d at 224. The Fourth Circuit has stated that examples of "aggravating and egregious behavior include: (1) lying and concealing a breach combined with acts to deter further investigation; and (2) intentional deception for the purpose of continuing to receive the benefits of an agreement." Foodbuy, LLC v. Gregory Packaging, Inc., 987 F.3d 102, 121 (4th Cir. 2021). Foreclosing on a property after default in payments is not a breach of contract nor an aggravating circumstance; but rather, it was an act pursuant to a right under the Mortgage and Deeds of Trust. Specifically, here, Plaintiff does not dispute that the loans were in payment default. Plaintiff fails to allege sufficient facts on how Defendants' conduct was unfair or deceptive. Plaintiff's repeated conclusory allegations that the loans were part of a loan-to-own scheme do not serve as factual allegations of any underlying wrongful act or specific misrepresentation for the reasons set forth above. Therefore, Plaintiff did not present a plausible claim for unfair and deceptive trade practices.

Any claim for unfair and deceptive trade practices similarly fails under Louisiana law. "LUTPA, codified in Louisiana Revised Statutes 51:1401 et seq., makes 'unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce' unlawful." Bernhard MCC, LLC v. Zeringue, 19-529

(La. App. 5 Cir. 09/09/20), 303 So. 3d 372, 379.  The Supreme Court of Louisiana has held that "only egregious actions involving elements of fraud, misrepresentation, deception, or other unethical conduct will be sanctioned based on LUTPA." Cheramie Servs., Inc. v. Shell Deepwater Prod. Inc., 2009-1633 (La. 4/23/10), 35 So. 3d 1053, 1060.  The elements of LUTPA are the same as the elements of UDTPA under North Carolina law, and the claim is similarly deficient.  Thus, the Motions to Dismiss of Specialized and Fay are granted as to claim ten; the Motion for Default Judgment is denied with respect to claim ten as to Recovco; and claim ten is dismissed as to Recovco.

> **3.  The Amended Complaint does not state sufficient facts to support a plausible claim for racketeering in violation of 18 U.S.C. § 1962 et seq.[45]**

18 U.S.C. § 1962(c) provides that it is "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."[46]  "The elements of a

---

[45] In the amended complaint, Plaintiff incorrectly cites § 1961, but in the Response, Plaintiff correctly cites § 1962 as the violation for claim eleven.

[46] RICO defines an "unlawful debt" as follows:

A debt (A) incurred or contracted in gambling activity which was in violation of the law of the United States, a State or political subdivision thereof, or which is unenforceable under State or Federal law in whole or in part as to principal or interest because of the laws

substantive RICO offense under § 1962(c) are '(1) the conduct (2) of an enterprise (3) through a pattern of racketeering activity.'" United States v. Mouzone, 687 F.3d 207, 217-18 (4th Cir. 2012); see Salinas v. United States, 522 U.S. 52, 62 (1997).

Plaintiff did not allege an enterprise between Defendants. ECF No. 84-1, at 29. Under § 1961, an enterprise "includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." Plaintiff claims that Defendants are associated in fact. "Proof of the existence of an associated-in-fact enterprise requires proof of a 'common purpose' animating its associates, and this may be done by evidence of an 'ongoing organization, formal or informal,' of those associates in which they function as a 'continuing unit.'" United States v. Griffin, 660 F.2d 996, 1000 (4th Cir. 1981); see Boyle v. United States, 556 U.S. 938, 946, 129 S. Ct. 2237, 2244 (2009) ("[I]t is apparent that an association-in-fact enterprise must have at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit

---

relating to usury, and (B) which was incurred in connection with the business of gambling in violation of the law of the United States, a State or political subdivision thereof, or the business of lending money or a thing of value at a rate usurious under State or Federal law, where the usurious rate is at least twice the enforceable rate.

18 U.S.C. § 1961(6). Plaintiff has not stated any facts indicating that any Defendant attempted to collect an unlawful debt as contemplated by RICO.

these associates to pursue the enterprise's purpose."); see also
United States v. Pinson, 860 F.3d 152, 162 (4th Cir. 2017) (a RICO
enterprise must at least consist of an ongoing organization that
functions as a continuing unit).  In Pinson, the Fourth Circuit
did not find a RICO enterprise present because the four ventures
"involved different memberships, methods, and motives, and thus
lacked the 'common purpose.'"  860 F.3d at 162.  Citing Pinson,
the Middle District of North Carolina, in McKoy v. Int'l Bus. Mach.
Corp., held that the plaintiff did not allege the requisite
enterprise because she did not sufficiently describe its features.
No. 1:20CV151, 2021 WL 8322617, at *3 (M.D.N.C. Jan. 22, 2021).
Similarly, in this case, Plaintiff does not sufficiently describe
the racketeering enterprise between Defendants.  Plaintiff just
reasserts the conclusory statement that Defendants acted together
through their loan-to-own scheme which was their common purpose.
ECF No. 51, ¶ 331.  Plaintiff does not allege any facts showing
the racketeering relationship among the Defendants, nor the
longevity of the alleged enterprise.  Thus, Plaintiff fails to
allege that Defendants acted as an organization and functioned as
a continuing unit.  Therefore, the enterprise requirement is not
met.

    Even if the Court held that Defendants acted as an enterprise,
Plaintiff fails to allege facts sufficient for the pattern of
racketeering element.  Plaintiff alleges that Defendants' alleged

scheme to defraud constitutes racketeering activity through their use of mail, commercial interstate carriers, and electronic means. ECF No. 51, ¶¶ 332-35. "To state claim for mail or wire fraud, a plaintiff must allege 'specific intent to defraud.'" Bourgeois v. Live Nation Entm't, Inc., 3 F. Supp. 3d 423, 462 (D. Md. 2014), as corrected (Mar. 20, 2014) (quoting United States v. Wynn, 684 F.3d 473, 478 (4th Cir. 2012). In Bourgeois, the court found that Plaintiff did not allege fraudulent representation or misrepresentation and thus, the RICO claim was dismissed. Likewise, as discussed above, Plaintiff did not allege a plausible claim for constructive fraud, fraudulent inducement, or negligent misrepresentation. Furthermore, Plaintiff's allegations do not give rise to a plausible inference that Defendants acted with a specific intent to defraud Plaintiff, where Defendants merely exercised rights validly held under the various contracts.

In addition, in order to satisfy the pattern of racketeering activity element in the Fourth Circuit, a plaintiff "must prove that an enterprise affecting interstate commerce existed; 'that each defendant knowingly and intentionally agreed with another person to conduct or participate in the affairs of the enterprise; and . . . that each defendant knowingly and willfully agreed that he or some other member of the conspiracy would commit at least two racketeering acts.'" Mouzone, 687 F.3d at 218; see United States v. Wilson, 605 F.3d 985, 1018-19 (D.C. Cir. 2010). In this

case, Plaintiff fails to allege that any individual knew of any racketeering acts. Plaintiff merely states that Defendants executed "their devised and intended scheme to defraud through the loan-to-own scheme." ECF No. 51, ¶ 334. This is nothing more than a threadbare recitation of the element and does not adequately plead a RICO claim. See Twombly, 550 U.S. at 555, 570; Francis, 588 F.3d at 193 (citing the same). Plaintiff does not allege facts from which one may plausibly infer that any individual on behalf of any defendant knowingly and willfully agreed with any other individual on behalf of another defendant to commit any racketeering acts. Therefore, Plaintiff did not sufficiently plead a cause of action for violation of § 1962, and the Motions to Dismiss of Specialized and Fay are granted; the Motion for Default Judgment is denied with respect to this claim as to Recovco; and this claim is dismissed as to Recovco.

## VI. Conclusion

For the reasons set forth herein, the Court will enter its order granting Fay's, Specialized's, and HOF I Grantor Trust 5's Motions to Dismiss, denying the Motion for Default Judgment, and dismissing all the claims in the Amended Complaint.

Claims 6-1, 7-1, and 8-2 will be allowed as filed. Any claimant shall have thirty days from entry of this Memorandum Opinion to file a motion in the underlying bankruptcy case for

allowance of fees under Section 506(b) and the terms of the confirmed plan.

[END OF DOCUMENT]

<u>Parties to be Served</u>
22-06005

All parties to this Adversary Proceeding.